## CITIZENS INSURANCE COMPANY ET AL. V. MARTIN HERPOL-SHEIMER ET AL.

FILED OCTOBER 4, 1906.   NOS. 14,347, 14,348, 14,349.

1. **Trial:** HARMLESS ERROR. An attorney employed by the insured to make out proof of loss refused to surrender the policies of which he had possession, claiming a lien thereon for professional services. In a suit brought against the insurance companies, the attorney was made a party defendant, and filed an answer and cross-petition asking judgment against the plaintiffs for the amount due him for his services and that it be made a lien on any judgment which the plaintiff might obtain against the defendants. The defendants asked that the issues made by their answers and those made by the answer and cross-bill of the attorney be tried separately. This the court denied, and proceeded to take evidence on all the issues made by the several parties. *Held*, Not reversible error.

2. **Pleading:** AMENDMENT. At the conclusion of the evidence the defendants asked leave to file an amendment to their answers to conform to the proof before the court. The trial was to the court without a jury. The application to amend was taken under advisement by the court and thus held until the final determination of the case, when an order was entered allowing the amendment, but reciting that "it would be considered as denied by the plaintiffs." *Held*, That a motion for judgment on the pleadings in favor of the defendants was properly overruled, as the effect of the order allowing the amendment to be filed was to grant such leave only on condition that the statements in the amendment should be considered denied by the plaintiffs without any formal pleading to that effect being filed, and the defendants could not have any benefit from the amendment without recognizing the condition.

3. **Insurance:** DEMAND: MERGER. All verbal demands for an appraisement and for an examination of the insured under oath touching the cause and origin of the fire are merged in a subsequent written demand therefor.

4. **A** written demand for the examination under oath of the insured, made jointly by three insurance companies, and which omits to name the time and place for such examination, or the person before whom it is to take place, is not a sufficient demand.

5. **Trial:** EVIDENCE: REVIEW. In a case tried to the court, the presumption obtains that the court, in arriving at a decision, will

consider such evidence only as is competent and relevant, and this court will not reverse a case so tried because other evidence was admitted.

6. **Insurable Interest.** A party to whom goods are consigned for sale on commission, and who is required to account to the owner for all goods received, has an insurable interest therein.

7. **False swearing** in the proof of loss cannot be predicated on a claim made for the retail price of the goods, and for freight, drayage, washing, setting up, etc., where such claim is made in good faith under the advice of an attorney regularly employed to advise and assist in making such proof.

8. **Findings: Review.** The findings of a court in a case tried to the court without the intervention of a jury are entitled to the same weight as the verdict of a jury, and will not be set aside when there is evidence to support them.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Greene, Breckenridge & Kinsler* and *Hall, Woods & Pound,* for plaintiffs in error.

*Field, Ricketts & Ricketts, contra.*

DUFFIE, C.

These actions are brought on policies of fire insurance issued by the several plaintiffs in error to the defendants in error on their stock of buggies, wagons, plows, harvesters, and all other merchandise usually kept in a business of this kind, like harness, binding twine, etc. The Herpolsheimers were insured in different companies for $8,000, $1,000 of which was in the Citizens Insurance Company, $2,000 in the Phenix Insurance Company, and $1,000 in the Reliance Insurance Company. The remainder of the $8,000, aside from $3,000, carried by the Citizens Insurance Company in a separate policy not involved in these actions, was carried in other companies. On the night of August 21, 1904, a fire occurred, whereby certain of the insured property was wholly destroyed and other parts thereof damaged. F. P. Olmstead, an attor

ney at Hastings, was employed to advise and assist the Herpolsheimers in their preparation of proofs of loss and in attempting to adjust the same with the several companies. Afterwards other attorneys were employed, and Olmstead refused to surrender to the plaintiffs the policies which had been placed in his hands. When suit was brought on the policies involved in this action, Olmstead was made a party defendant in order, as stated by the defendants in error, that the policies might be available on the trial and the defendant companies discharged from further liability thereon. Olmstead filed an answer and cross-bill, setting up an attorney's lien on the policies for legal services performed, and asking that he might have judgment for the amount of his claim against the Herpolsheimers and that it be made a lien on any amount recovered by them. As his claim has been fully settled and disposed of it will not be further noticed, except so far as it is necessary to discuss the claim made by the plaintiffs in error that they were prejudiced by his claim being litigated in the same suit in which they were defending against a recovery on the policies by the Herpolsheimers. The case against the Citizens Insurance Company was tried to the court without a jury, and the other cases were submitted by stipulation on the same evidence, and the stipulation further provides that they are to be submitted to this court upon the same brief. The court found against the plaintiffs in error, and entered judgment for $946.79 on each $1000 of the amount of the insurance. The policies contain the following provision: "This entire policy shall be void * * * in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." At the conclusion of the evidence plaintiffs in error asked leave to amend their answers to conform to the proof. The amendment alleged false statements on the part of the defendants in error, in that their sworn proof of loss was false and fraudulent in many particulars specifically set out in

the amendments offered. These amendments were lodged with the clerk March 14, 1905, but the court held the same under advisement until the final decision of the cases on the merits on April 8, 1905. From the journal entry it appears that the court then made the following disposition of the application to amend the answers: "At the conclusion of the evidence the defendant company requested leave to file a supplemental answer charging the plaintiffs with false swearing in their proof of loss. Ruling at the time was reserved. The defendant company has placed in the hands of the clerk the proposed supplemental answer. Leave is now given the defendant company to file the same. It will be considered as denied by the plaintiff."

After the entry of judgment plaintiffs in error filed a motion for judgment on the pleadings, grounded upon the fact that defendants in error had filed no reply to the allegations of the amended or supplemental answers, and the first assignment of error argued in the brief is based upon the refusal of the court to sustain said motion, and to enter judgment in favor of the plaintiffs in error. It is urged that under our practice all material allegations of an answer not denied by the reply stand admitted; and it was held in *Grant v. Bartholomew*, 57 Neb. 673, that, "though the evidence disproves the material allegations of new matter in the answer, such evidence will be disregarded, unless such new matter is denied by a reply." That a material allegation in the petition not denied by the answer, or in the answer not controverted by the reply, stands admitted, is the rule of our code which the plaintiffs in error insist shall be applied in these cases. To this contention we cannot agree. Aside from the fact that leave to file this amendment was not given until the entry of final judgment in the case, when the defendants in error had no opportunity to file a reply, is the provision of section 144 of the code, providing for amendments, which directs the court to allow them on such terms as shall be just. When leave was asked to file the

amendments in question, the court took the matter under advisement and did not pass upon the question until it had finally disposed of the case. It then allowed the amendment to be filed upon condition that the allegations therein contained should be considered denied. If the plaintiffs in error wish to avail themselves of any benefit from their amendments they must accept the conditions imposed by the court in allowing the same. It is not unreasonable to attach to the filing of an amended pleading, under the facts above set out, a condition that the allegations contained in the amendment shall be considered denied without the filing of any formal pleadings by the opposite party controverting its allegations. Any other course would have worked a grave injustice to the defendants in error, who were not present and had no opportunity to reply.

When the case was called for trial, the plaintiffs in error requested that the issues made between the Herpolsheimers and the companies, and the issues raised by the pleadings filed by Olmstead, be separately tried. This was refused by the court, and such refusal is assigned as error. It is insisted, and there is some force in the suggestion, that Olmstead and the Herpolsheimers tried the case on inconsistent and conflicting theories, and that plaintiffs in error had to meet each of those theories and were placed at a disadvantage in consequence thereof. We cannot avoid the suspicion, after reading Olmstead's pleadings in the case, that plaintiffs in error were quite contented that Olmstead should remain a party to the suit and establish, if he could, the allegations of his cross-bill. That his presence in the action was more embarrassing to the defendants in error than to the companies is quite apparent from an inspection of the record; but in any event Olmstead had no claim against the companies, and the most he could do was to establish the amount due him for legal services from the Herpolsheimers, and have this claim made a lien upon any judgment that might be entered against the companies in their favor. That it was

reversible error to join the trial of these two claims is not apparent.

Assignments 3, 5 and 6 each relate to alleged errors in the introduction of testimony. As the case was tried to the court without the intervention of a jury, the admission of incompetent or irrelevant evidence is not reversible error. In *Willard v. Foster*, 24 Neb. 205, it is said: "In causes thus tried, it has been often held by this, as well as other courts, that error for the admission of improper evidence would not lie. The court must necessarily have an opportunity to examine each article of evidence offered, even for the purpose of rejecting it; and so the duty of acting and deciding the cause, upon the legal and relevant evidence selected from the mass that may have been introduced, may be as well discharged by the court upon the final consideration of the cause, as to pause in the course of the trial, to pass upon the admissibility of the several matters offered in evidence." This has been the uniform rule of this court, as evidenced by numerous cases since the decision in *Willard v. Foster, supra.*

The fourth assignment relates to the finding of the district court that the Herpolsheimers had an insurable interest in what is known as the "Acme harvester repairs." The evidence is sufficient to establish the findings of the court that the Acme harvester repairs were received by the Herpolsheimers under a contract by which they were authorized to sell the same and give title thereto; that they were to receive as their compensation the amount of the sale, less a fixed price for the goods, and they were liable to account for the stipulated price if the goods were not accounted for. This, no doubt, under the authorities, gave the Herpolsheimers an insurable interest in the goods. In *German Ins. Co. v. Hyman*, 34 Neb. 704, it was held that "an interest, to be insurable, does not depend necessarily upon the ownership of the property. It may be a special or limited interest disconnected from any title, lien, or possession. If the holder of an interest in property will suffer loss by its destruction he may indem-

nify himself therefrom by a contract of insurance. If, by the loss, the holder of the interest is deprived of the possession, enjoyment, or profit of the property, or a security or lien resting thereon, or other certain benefits growing out of or depending upon it, he has an insurable interest." The fact that the contract between the Acme company and the Herpolsheimers required them to insure the property in the name of the Acme company is a matter solely between these parties, in which the insurance companies are not interested.

The seventh assignment relates to alleged errors of the court on its finding of damages to the binding twine, the value thereof and the admission of testimony in relation thereto. None of the twine was burned. The damage thereto was by water. A portion of the twine, perhaps one-half of it, was taken out of the burned building, put upon a wagon, and removed to what is known in Hastings as the "Minneapolis Thresher Building." One or more witnesses testified that this portion of the twine had not been damaged by water. Other witnesses controverted this, and said that all the twine had been watersoaked. Several witnesses testified that they had had experience with binding twine, and that after being wet it had no commercial value. It further appears that the Herpolsheimers proffered this twine to the companies at the cost price, or that the twine be placed in the hands of any dealer the companies might select, to be sold by him to the best possible advantage, and the difference between what it brought and its value before the fire determine the damages. If the twine was not damaged, or not damaged to the extent claimed by the plaintiffs, this proposition was entirely fair, and practically gave the insurance companies the privilege of ascertaining the damage by their own agent.

Relating to false statements in the proof of loss, which is assignment No. 8, the alleged false swearing is based upon the fact that in the proof of loss many of the items constituting it were placed at a sum in advance of the fac-

tory cost, and that the proofs made claim for the loss of the Acme harvester repairs, in which, it is claimed, the defendants had no insurable interest. It is shown by the evidence that Mr. Olmstead, the attorney engaged by the Herpolsheimers to prepare the proofs of loss, advised them that they were entitled to the retail price of the goods, and for freight, drayage, washing, setting up, etc. The Herpolsheimers acted upon this advice and, nothing appearing to show their lack of good faith in so doing, they cannot be charged with wilful false swearing. That they had an insurable interest in the Acme repairs we have already determined.

The ninth assignment relates to finding No. 6 by the district court, which is in the following words: "That plaintiffs did not, nor either of them, refuse to submit to examination under oath by any person named by the defendant company, and to subscribe the same." September 14, 1904, M. M. Hamlin, an adjuster representing the several companies, made a written request upon the plaintiffs in error for an appraisement of the loss, and this written request also demanded a sworn examination of the Herpolsheimers in the following language: "We further demand that you submit to a sworn examination under oath regarding the cause or origin of said fire, and such other facts and information as may be necessary for the above companies to form an intelligent opinion of same." Hamlin claims to have made a verbal demand upon both the Herpolsheimers and their attorney, Olmstead, for an examination at his hotel in Hastings, and during his stay there, and he testified that Olmstead refused to allow his clients to be examined under oath. Olmstead testified that he met Hamlin on several occasions, "and that, whenever he suggested or demanded that the plaintiffs in the case should be examined under oath by the insurance company, I made him the tender that they would appear anywhere and at any time, and answer any questions that they would put to us, in the city of Hastings." It further appears from the testimony of Hamlin that, when talking

with Olmstead about the appointment of appraisers and the demand for a sworn examination of the Herpolsheimers, Olmstead told him to put his demand in writing, and that thereupon he prepared the paper containing the demand for a sworn examination and served the same upon the Herpolsheimers and their attorney. This written demand must be regarded as merging all former verbal requests and as the final demand made upon the defendants in error for a sworn examination. That it was not sufficient is abundantly shown by the authorities.

In *Aetna Ins. Co. v. Simmons*, 49 Neb. 811, it is said: "But if the clause in the policy under consideration be one with which the insured must comply in order to recover, then it was incumbent upon the insurance company to fix a time and a place and to name some person authorized by law to administer oaths before whom the examination of the insured should be had. The insurance company did none of these things. Doubtless the time fixed for the examination must have been within a reasonable date after the company received notice of the fire. Doubtless the place of the examination would have been at a reasonably convenient place in the county where the assured resided. It remains to be said of the question under consideration that a fair construction of the clause of the policy is that the insured shall submit to examination under oath at such reasonable place as may be designated by the company or its representative. We reach the conclusion that the insurance company, by failing to demand this examination within a reasonable time after the fire, and by failing to designate a time and place and an officer before whom such examination should occur, has not put itself in a position to urge the refusal of the insured to submit to an examination as a defense to this action."

The written demand shows for itself that no time or place was named for the examination, no person before whom it should take place is named, and, however willing the parties may have been to acquiesce in the demand, it left them in ignorance of the person before whom they

should appear, or the time and place of their appearance. The court therefore correctly found that the plaintiffs did not refuse to submit to an examination under oath by any person named by the defendant companies.

The eleventh assignment complains of the amount of the judgment entered by the district court, claiming it to be excessive. It would unduly extend this opinion, and be of no benefit to the profession, to review the evidence relating to the amount of loss and damage. If the question was before us as an original proposition, we would not, perhaps, give judgment for the full amount allowed by the district court. There is, however, evidence amply sufficient to sustain its findings, and in this state of the case we cannot interfere. The case was apparently tried with care, and certainly nothing was omitted on the part of the defendants below in making their defense.

No reversible errors being shown in the record, we recommend an affirmance of the judgments in the several cases.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgments of the district court are

AFFIRMED.