M. SALZMAN, Appellant, · v. MACHINERY MUTUAL INSURANCE ASSOCIATION, Appellee.

M. SALZMAN, Appellee, v. LISBON MUTUAL FIRE INSURANCE Co., Appellant.

**Reformation of insurance contract:** MUTUAL MISTAKE: EVIDENCE.   To
1   reform an instrument on the ground of mutual mistake the evidence must be clear; at least there must be a fair preponderance in plaintiff's favor.   In the instant case the evidence is held insuffi-

cient to show a mutual mistake between an insured and one not the agent of the insurance company, in that the contract failed to show permission to place other concurrent insurance on the property.

**Same:** AGENCY. Oral application to a party for insurance, upon whose report to the company a policy is issued, is sufficient proof of agency; and agreements of the agent·as to the form of the policy are binding upon the company. Evidence held to show an agreement to provide for other concurrent insurance which by mutual mistake was omitted, justifying a reformation of the contract.

**Insurance:** FRAUD AS A DEFENSE TO SUIT ON POLICY. False representations in an application for insurance can not be relied upon as a defense to a suit on the policy, when the same are not pleaded and a copy of the application is not attached to the policy.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

WEDNESDAY, APRIL 7, 1909.

ACTION in equity to reform certain policies of fire insurance and to recover for losses alleged to have been incurred thereunder.—*Affirmed.*

*Saunders & Stuart,* for plaintiff.

*Will E. Johnston* and *Flickinger Bros.,* for defendants.

WEAVER, J.—On February 20, 1904, the Machinery Mutual Insurance Association issued to the plaintiff a policy of insurance for $1,500 against loss or damage by fire on his stock of clothing, furnishing goods, hats, caps, boots, shoes, and other goods of not more hazardous nature in Sioux City, Iowa; said policy to expire on February 20, 1905. On November 22, 1904, the Lisbon Mutual Fire Insurance Company renewed a policy for $1,500 upon the same property for one year from that date. On the

night of December 14, 1904, plaintiff's place of business was burned and more or less of the insured property destroyed. The insurance companies having denied liability for the loss, plaintiff instituted separate actions against them, alleging the issuance of the policies, the loss of his goods by fire, and due proofs thereof to the companies, and in each instance he alleges that he is unable to read or write the English language, that at the time of applying for the policy in question he requested the company through its agent to make provision therein allowing him to place other and concurrent insurance upon the property, and that said agents promised and agreed to do so. He further alleges that by mutual mistake and oversight said provision was not inserted in the policy, but, on the contrary, it contained a clause by which the obtaining or procuring of additional insurance without said company's consent would operate to release said company from all liability. Upon this showing he asks that the policies be reformed to express the true agreement between the parties and to recover the amount of the promised indemnity. In each case the defendant answers admitting the issuance of the policy on which suit is brought, but denies there was any mistake in the form or substance of such policy, or that the contract was any other or different than is therein expressed. It avers also that the contract of insurance has been avoided by the act of the plaintiff in procuring other insurance contrary to the terms of the agreement. By way of cross-petition, the defendant alleges that the policy was issued in reliance upon certain representations made by plaintiff in his application for insurance, which statements have since been found to be false, and because of such fraud and false representations it asks that the policy may be canceled as void. In reply plaintiff denies the affirmative matter contained in the answer and restates in substance the matters set up in his original petition. The two cases were tried together

in the district court, resulting in a dismissal of the bill against the Machinery Mutual Insurance Association and decree in plaintiff's favor against the Lisbon Mutual Fire Insurance Company. The plaintiff in the first and the defendant in the last entitled action appeal. The two appeals have been argued and submitted in this court upon a single record, but we shall best avoid confusion by disposing of them in separate divisions of the opinion.

I. The policy in the Machinery Company was obtained by plaintiff through one Tipton, who appears to have been doing business, to some extent at least, as an insurance broker. The application was carried by Tipton to one Ohlendorf, a local agent of said company through whom the policy was procured. Plaintiff did not at any time deal directly with Ohlendorf or the company. The policy provides for forfeiture in case other insurance then existed upon the property or be thereafter placed upon it without the company's consent. It is admitted, however, on behalf of the company, that it had knowledge or notice of existing insurance at the date of its policy, and that no forfeiture can be predicated thereon. On behalf of the plaintiff, it is admitted that after the issuance of his policy, and before the fire, he did procure other new and additional insurance without notice to the company or obtaining its consent thereto. It is also conceded, and the case has been tried upon the theory, that, under the policy as issued, the procurement of this additional insurance operates to release the company from all liability for the loss unless the record be sufficient to justify the reformation of the policy as prayed by the plaintiff. If therefore the showing made for such equitable relief be insufficient, it will not be necessary as against this defendant to consider any other issue raised by the pleadings.

An examination of all the testimony offered in support of his claim for reformation of the contract of in-

<div style="margin-note">1. REFORMATION OF INSURANCE CONTRACT: mutual mistake: evidence.</div>

surance leads us to coincide with the finding of the trial court that a case for such relief has not been made. It will be observed that the demand for reformation is grounded, not upon fraud, but upon an alleged mutual mistake. It is elementary that such relief will not be granted upon any doubtfully balanced array of testimony. The proof of the mistake must be clear, and to say the least, must show a fair preponderance in the plaintiff's favor. . This demand of the law is not answered in the record pertaining to the branch of the case now under discussion. In the first place, the broker and the agent through whom the policy was procured unequivocally deny that any mistake was made, thus rendering the mutuality of the oversight, if any, very doubtful to say the least; but, even if we were to waive this objection, we find the testimony of the plaintiff himself does not fully bear out the allegations of his pleadings. He says: "I told him (Tipton) I wanted him to make my policy for Sioux City, and that in the fall or spring, when I wanted more insurance, I should have the right to have it. . . . I told him I wanted a policy made so that in the spring or fall at any time when I wanted more insurance I should have the right to have it. . . . I told him I wanted and that in the fall or spring, when I wanted more insurance, as I should buy more goods, and he said, 'All right,' and gave me this policy." On cross-examination he is made to say: "Q. You told him you wanted $1,500 insurance, did you? A. Yes, sir. Q. You didn't sign anything at that time? A. I don't remember. Q. You told him that maybe in the summer or spring you would want more insurance? A. Yes, sir. Q. And he told you if you did to come to him and he would fix it? A. Yes, sir." Making all due allowance for the difficulty under which the plaintiff labors by reason of his lack of education and imperfect mastery of our language, it is still very difficult to extract from his testimony the mean-

ing which his counsel place upon it. Its literal truth may be conceded, and yet it is equally open to the interpretation which opposing counsel place upon it as a promise by the company or its agent to give its consent to additional insurance upon proper application being made therefor. Certain it is that it falls far short of the clear showing required to invoke the equitable jurisdiction of the court for the reformation of a written agreement. Such being our view, the affirmation of the decree of the lower court upon the issue between the plaintiff and the Machinery Mutual Insurance Association necessarily follows.

II. While the issues made by the pleadings between the plaintiff and the Lisbon Company are quite parallel to those between plaintiff and the Machinery Company, the testimony bearing thereon makes a materially different case. Although the same person (Tipton) procured both policies, his relation to the two companies was dissimilar. He was not the agent of the Machinery Company, but was the local soliciting agent of the Lisbon Company. It also appears that on November 26, 1902, upon plaintiff's application, through Tipton, this company issued its policy on plaintiff's stock of goods for one year for the sum of $1,500, with notice that he was then carrying $3,000 other insurance. At the expiration of the period, the policy was renewed for another year. In November, 1904, plaintiff desiring to continue his insurance for a third year, the company sent him a renewal slip to be attached to his old policy. Plaintiff, as we have seen, was unable to read; but, the paper sent being so much smaller than an ordinary insurance policy, he was suspicious of its character and took it to Tipton, saying he did not want it, but wanted a new policy issued to him, and asked that it be so made as to enable him to carry at the same time an additional insurance of $3,500, which he then had upon the property. This outstanding insurance consisted of the policy of $1,500 in the Machin-

*2. SAME: agency.*

ery Company already considered and a policy of $2,000 in another company not a party to this litigation, of both of which Tipton had knowledge. Not coming to an understanding, plaintiff and Tipton went together to the office of a lawyer, Hon. C. G. Saunders, at Council Bluffs, where plaintiff produced all his policies, and, stating his desire to carry a total insurance of $5,000, including the policy of $1,500 issued by defendant, asked advice as to the renewal offered him. Tipton agreed that he would have the policy so fixed as to effectuate the plaintiff's wish. Saunders advised the issuance of a new policy in accordance with this agreement and assured plaintiff that his insurance would then be all right. This matter appears to have been reported by Tipton to the company for its action thereon, for it is shown by the testimony of its secretary that a new policy was issued in place of the renewal and sent to the plaintiff, but such policy failed to provide for other insurance to the amount of $3,500, as had been promised by Tipton. Plaintiff, being unable to read, did not discover this omission until after the loss of his property by fire.

These circumstances fully justify and sustain the action of the trial court in reforming the policy to avoid its invalidation by reason of the other insurance outstanding at the date of the renewal. The fact that Tipton was a soliciting agent of the company, and not a recording agent, is immaterial under the state of facts here disclosed. Though no new written application was made, plaintiff did make oral application therefor to Tipton, and on report of his wishes by Tipton the company issued the policy sued upon. This would be sufficient proof of an agency even at common law, but under the terms of our statute that relationship is established beyond controversy. Code, section 1750; *Key v. Insurance Co.,* 77 Iowa, 174; *Miller Co. v. Insurance Co.,* 95 Iowa, 31. Under such circumstances the knowledge of Tipton was the knowledge of the

company he represented, and his agreement as to the form of policy to be issued was its agreement, and there is nothing inequitable or unjust in holding it to the observance of the terms so agreed upon. The only affirmative defense pleaded to plaintiff's action on the policy is its alleged forfeiture by reason of his having placed unauthorized additional insurance upon the property, and as the reformation of the policy renders such defense unavailable, there is no occasion for further consideration of that feature of the issues.

Counsel argues the proposition that plaintiff was guilty of false representations in his application for the policy and therefore can not recover. There are two sufficient reasons for overruling this contention.

**3. INSURANCE: fraud as a defense to suit on policy.** In the first place, no such defense is pleaded, and, in the second place, no copy of the application is indorsed upon the policy, and under the statute the defense can not be entertained. Code, section 1741. Objection is also raised that plaintiff failed to prove loss to the extent of his valid insurance. While the evidence upon this issue is quite conflicting, we think it sustains the finding of the trial court, and that the insurance held by plaintiff upon the property was not in excess of its value.

III. In each case, as we have already noted, defendant has filed a cross-bill asking to have its policies canceled. The points made in support of this demand are largely the same made by counsel in defense to plaintiff's action. We shall not attempt their further discussion. The evidence will not warrant the relief so demanded, and the district court did not err in dismissing the cross-bills.

The decree of the district court is therefore affirmed in all respects upon both appeals.—*Affirmed.*