## LIVERPOOL & LONDON & GLOBE INS. CO. v. CARGILL.

No. 3498. Opinion Filed October 13, 1914.

Rehearing Denied January 30, 1915.

(145 Pac. 1134.)

1. **INSURANCE—Action on Policy—Defense—Pleading—Condition Subsequent.** In an action against an insurance company to recover the amount of a policy on a building totally destroyed by fire, where subsequent to the issuance of the policy there was attached thereto a vacancy permit, which by its terms suspended one-third of the amount of recovery in the event of loss or damage during such vacanacy, and where the loss occurred subsequent to the date of such permit and while the building may have been vacant, but where the company did not specially plead as a defense **pro tanto** its reduced liability, such defense cannot be considered either in the trial court or on review.

2. **SAME—Mortgage Clause—Rights of Insured—Protection of Mortgagees.** Where during the life of a policy of fire insurance there was attached thereto the company's "Loss Payable Form," which provided that, "all previous claims having been paid, any loss that may be ascertained and proven to be due Mrs. Annie Mathews, the assured under this policy, shall be payable to State Guaranty Bank of Frederick, Okla., as its interest may appear," and where the amount of the mortgage debt due from the insured to the bank was less than the amount due under the policy, the insured may maintain an action in her own name on the policy. In such case the court should by proper order protect the rights of the mortgagee.

3. **SAME—Forfeiture—Estoppel.** Any agreement, declaration, or course of action on the part of the insurance company, which

leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the fortfeiture although it might be claimed under the express letter of the contract.

4.    **SAME—Proof of Loss—Estoppel.** When the insured, in good faith and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy as to proof of loss, good faith equally requires that the company shall notify him promptly of any objections thereto, so as to give him an opportunity to obviate them, and mere silence may so mislead him, to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel.

5:    **SAME—Fire Insurance Policy—Provision for Examination—Abandonment.** The provision of a fire insurance policy requiring the insured to submit to examination under oath by any other person named by the insurance company, and to subscribe the same, is a reasonable requirement and one that the insured may generally be required to perform. Where, however, notice to appear at a time and place is given, and on the day set for examination the representative of the insurer excuses the insured from attendance, and thereafter no further notice is given, and no agreement relating thereto is entered into, the right to require the examination will be held to have been abandoned.

6.    **SAME—Representation by Attorney.** At such examination the insured has the legal right to be represented by an attorney at law.

(Syllabus by Sharp, C.)

*Error from County Court, Tillman County;*

*T. E. Campbell, Judge.*

Action by Annie Cargill, *nee* Mathews, against the Liverpool & London & Globe Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Scothorn, Caldwell & McRill,* for plaintiff in error.

*Mounts & Davis* and *Gray & McVay,* for defendant in error.

Opinion by SHARP, C. It is urged that the court's charge directing that, if the jury should find for the plaintiff, they should fix the amount of her recovery at not to exceed $350,

was erroneous. This was the amount of the policy, and the sum which plaintiff would be entitled to recover, unless controlled by a vacancy permit attached to the policy on June 14, 1910, which by its terms limited the amount of plaintiff's recovery to two-thirds of the loss or damage sustained. The limitation upon the amount of recovery was dependent upon the building becoming vacant, and not the mere indorsement of the vacancy permit upon the policy. If the building was vacant at the time of the loss, and this fact had been pleaded as a defense, plaintiff's recovery would be limited as provided in the vacancy permit. Being a condition subsequent, it devolved upon defendant both to allege and prove a state of facts releasing it from the observance of its original undertaking to pay the full amount of the policy. *Norwich Union Fire Ins. Soc. v. Prude et al.,* 156 Ala. 565, 46 South. 974; *Atlas Ins. Co. v. Robison,* 94 Ark. 390, 127 S. W. 456; *Tischler v. Cal. Farmers' Mut. Fire Ins. Co.,* 66 Cal. 178, 4 Pac. 1169; *Phenix Ins. Co. v. Caldwell,* 187 Ill. 73, 58 N. E. 314; *Salzman v. Mach. Mut. Ins. Ass'n,* 142 Iowa, 99, 120 N. W. 697; *Shawnee Fire Ins. Co. v. Knerr,* 72 Kan. 385, 83 Pac. 611; *Sprigg v American Cent. Ins. Co.,* 101 Ky. 185, 40 S. W. 575, 19 Ky. Law Rep. 363; *Benjamin v. Connecticut Indemnity Ass'n,* 44 La. Ann. 1017, 11 South. 628, 32 Am. St. Rep. 362; *Pierce v. Cohasset Ins. Co.,* 123 Mass. 572; *Caplis v. American Fire Ins. Co.,* 60 Minn. 376, 62 N. W. 440, 51 Am. St. Rep. 535. As defendant's answer contained no allegation whereby its liability in the event of a recovery against it should be limited, on account of any subsequent act of the parties, the defense was not made an issue and is not properly before us for review.

It is next urged that the plaintiff was not the real party in interest, due to the fact that there was attached to the policy, on June 14, 1910, a "Loss Payable Form," providing that any loss that should be ascertained and proved to be due the insured under said policy "shall be payable to the State Guaranty Bank of Frederick, Okla., as its interest may appear." The amount

of the note given by the plaintiff to the bank, secured by the mortgage on the insured premises, was $300 and accrued interest. The total amount due on the note at the time of the loss, however, was less than the face of the policy. The mortgagee's interest being less than the full amount recoverable under the policy, the action was one that could be maintained by the mortgagor. *Fire Ins. Co. v. Felrath,* 77 Ala. 194, 54 Am. Rep. 58; *St. Paul F. & M. Ins. Co. v. Johnson,* 77 Ill. 598; *Stevens v. Citizens' Ins. Co.,* 69 Iowa, 658, 29 N. W. 769; *Smith v. Continental Ins. Co.,* 108 Iowa, 382, 79 N. W. 126; *Hartford Fire Ins. Co. v. Davenport,* 37 Mich. 609; *Martin v. Franklin Fire Ins. Co.,* 38 N. J. Law, 140, 20 Am. Rep. 372; *Branigan v. Jefferson Mut. Fire Ins. Co.,* 102 Mo. App. 70, 76 S. W. 643; note to *Chipman et al. v. Carroll,* 53 Kan. 163, 35 Pac. 1109, 25 L. R. A. 305; Briefs on the Law of Insurance, Cooley, p. 3709 *et seq.;* Joyce on Insurance, sec. 612.

While it does not appear that the decisions upon this question are in entire harmony, as to whether the mortgagor, mortgagee, or both, have the right to sue on a policy of insurance, where the mortgage clause makes the loss payable to the mortgagee as its interest may appear, yet where the amount recoverable under the policy exceeds the amount due the mortgagee from the insurer, and where in addition, as in this case, it appears that the vice president of the mortgagee bank appeared in court and testified as a witness concerning its indebtedness due from the mortgagor, and thereby tacitly consented to the prosecution of the action in the insured's name, the judgment of the trial court will not be reversed on the ground that the action was not maintained by the real party in interest.

In actions by the mortgagor, the court can and should in its judgment protect the interest of the mortgagee, where the provisions of the policy in that respect have been observed. Section 5573, Comp. Laws 1909 (section 4696, Rev. Laws 1910), provides that the court may determine any controversy between parties before it when it can be done without prejudice to the rights of others; but when a determination of the controversy cannot

be had without the presence of other parties, the court must order them brought in.

It is urged that the insured failed to give the company proof of loss as required by the provisions of the policy. While it is alleged by plaintiff in her petition that she had furnished defendant company with proof of loss and interest, and had otherwise performed all of the conditions of said policy on her part, it is clear that no proof of loss, such as contemplated by the express terms of the policy, was rendered by the insured. This fact was recognized by the insurer, when at its instance the court instructed the jury:

"Provided that if you believe plaintiff has proven a waiver on the part of the defendant of any of said requirements, then plaintiff would, by reason of such waiver, be relieved from the performance of any such waived requirements."

It is a familiar rule of law that one may preclude himself from insisting on a formal condition inserted for his benefit in a contract or policy of insurance. In such cases it is not necessary that the waiver should be express, but it may be a·legitimate deduction from the acts and conduct of the party. The chief object of furnishing proof of loss is to enable the insurer to determine the question and extent of its liability. *St. Paul F. & M. Ins. Co. v. Mountain Park Farm. Co.,* 23 Okla. 79, 99 Pac. 647; *Rokes v. Amazon Ins. Co.,* 51 Md. 512, 34 Am. Rep. 323. A substantial compliance with the requirements of the policy is all that is required. *St. Paul F. & M. Ins. Co. v. Mittendorf,* 24 Okla. 651, 104 Pac. 354, 28 L. R. A. (N. S.) 651; *Continental Casualty Co. v. Wynne,* 36 Okla. 325, 129 Pac. 16; *Pacific Mutual Life Ins. Co. v. O'Neil,* 36 Okla. 792, 130 Pac. 270.

While questions as to what may or may not constitute a waiver are for the court, the decisions as to such questions, indeed, constituting the body of the law as to waiver, yet the question as to whether there has been a waiver proved in any particular case is primarily one of fact for the jury. Briefs on the Law of Insurance, Cooley, pp. 2777, 2779. At the time of the loss plaintiff was living at Lindsay, Garvin county. Im-

mediately after the fire the insurer was notified thereof, and on June 21st wrote Mrs. Mathews, acknowledging receipt of the notice of loss, and inquiring whether she still owned the property, and if so, to furnish a detailed estimate of the building, with its plans, and information showing how the building was occupied at the time of the loss, the cause of the fire, and the incumbrances if any; and asking further, by way of postscript, "When was building built, when painted, when repaired?" On June 24th plaintiff replied to this letter, giving the information called for, except it does not appear that the company was advised as to the cause or origin of the fire. On June 27th the company replied to plaintiff's letter, demanding the execution in duplicate of a nonwaiver agreement before they would proceed further; and, in addition, stated that, when this request was complied with, a detailed schedule with plans of house should be made up by a competent builder, the party who originally constructed the house, if his services could be obtained; and also advised plaintiff that her reply to its letter of June 21st "is in no way satisfactory." Later on a complete bill of lumber and materials used in the construction of the house was made out and furnished the company at the instance of the insured by the manager of the Dascomb-Daniels Lumber Company at Frederick. No further correspondence appears to have passed between the parties until July 26th, when the insured wrote the company, advising it of the whereabouts of the policy, and making inquiry concerning the settlement of the loss. On August 1st the claim was turned over for settlement by the insurance company to the Bates Adjustment Company, and some time during the month Norman Nelson, representing the latter company, visited Frederick, and called upon the company's local agent, and together they visited the premises where the house had been destroyed, took measurements of the lots, and later called on a local painter and paper hanger, and procured from him a bill for the paint, paper, and canvas used in the building. It appears that later on W. E. Hudson, at the time the

insured's attorney, accompanied by plaintiff's husband, called on Nelson at Oklahoma City concerning an adjustment of the loss. The testimony of the husband was to the effect that all proofs and accounts demanded by Nelson were furnished, but that Nelson advised them that before he would make a settlement he would first have to see the insured.

Under the terms of the policy it was the duty of the insured, if required, to furnish verified plans and specifications of the building destroyed; but in all events, unless waived, it was the insured's duty to furnish, within 60 days after the fire, proof of loss covering and including the items of information named in the policy. We think, however, that the effect of the letter of June 21st was to limit the latter information to three particulars: (1) How the building was occupied at the time of the loss; (2) cause of the fire; (3) incumbrances, if any. It would appear further from this letter that the information sought could be imparted by letter or other means of communication, thus doing away with the provisions of the policy requiring that the proof of loss should be signed and sworn to by the insured. *St. Paul F. & M. Ins. Co. v. Mittendorf,* 24 Okla. 651, 104 Pac. 354, 28 L. R. A. (N. S.) 651. By her letter of the 24th the insured gave the information called for, except as to the cause of the fire. This information, however, was supplied later, according to Cargill's testimony. The only request, therefore, as to additional information, mentioned in the latter letter, was for a detailed schedule with plans of house, made up by a competent builder. These bills, prepared by the lumber company, purported to give in detail the amount of lumber and building materials used in the house, and cover almost two pages in the record. The value of each item of material is shown, the total amount of the bill being $395.75. On September 2d, after the expiration of the time allowed for making proof of loss, the adjuster wrote the insured a letter which is confusing in its terms and uncertain in its meaning. It acknowledged receipt of "a document purporting to be a correct estimate of building al-

leged to have been destroyed by fire at Frederick, Okla., on the 18th day of June, 1910," and proceeds:

"You are hereby notified that this document in no manner complies with the terms of .the policy as to what constitutes a proof of loss."

Referring to the same instrument, there immediately follows, "Said statement does not give your knowledge or belief as to the origin of the fire or the time of same," and numerous other specific objections, some of which were items properly a part of the proof of loss under the terms of the policy, and others were not. The policy provided that, if required, the insured should furnish verified plans and specifications of buildings destroyed or damaged, and it was this provision which the insured, in the document referred to at the beginning of the letter, had attempted to observe. This so-called statement or document, it is true, did not contain the information referred to in the letter; neither was it necessary that it should. It was but an estimate of the materials used in the building.

From what has been seen, we must conclude that there was sufficient evidence of a waiver of formal proof of loss by the insurer to take the case to the jury. But one item was covered by the policy—a dwelling house, which was totally destroyed by the fire. The company had called upon the insured for certain specific information relating to the loss, and had received it without objection either to its form or sufficiency, except to advise that a certain letter was in no way satisfactory. Its conduct relative to the claim was sufficient to justify the belief on the part of the insured that formal proof of loss would be dispensed with. The company at no time denied its liability; it did not undertake to stand on its legal rights and require of the insured a full and complete compliance with the terms of the policy. The interest of the mortgagee in the policy was known to it, as its previous consent thereto had been obtained. It had also caused to be pursued on its own account an independent investigation of the loss. In this connection, it is said in Cooley's Briefs on the Law of Insurance, p. 2526:

"If the company investigates the loss on its own account, and so conducts itself with relation thereto as to show a satisfaction with the knowledge thus obtained, or to induce reasonable belief in insured that it is so satisfied, and does not desire formal notice or proofs, it will amount to a waiver of such formalities."

The rule thus stated is supported by many authorities, and comports with sound reason. It has been said that slight evidence will raise a waiver against an insurance company when the equities are in favor of the insured. *Bonefant v. American Fire Ins. Co.,* 76 Mich. 653, 43 N. W. 682; *Germania Ins. Co. v. Kiewer,* 129 Ill. 599, 22 N. E. 489; *German Ins. Co. v. Gibson,* 53 Ark. 494, 14 S. W. 672.

In *Knickerbocker Ins. Co. v. Norton,* 96 U. S. 234, 24 L. Ed. 689, after the citation of a number of cases, and after calling attention to the fact that forfeitures were not favored in law, being often the means of great oppression and injustice, the court concluded:

"These cases show the readiness with which courts seize hold of any circumstances that indicate an election or intent to waive a forfeiture."

In *New York Life Ins. Co. v. Eggleston,* 96 U. S. 572, 24 L. Ed. 841, after referring to the holding of the court in the Norton case, the court added:

"Any agreement, declaration, or course of action on the part of the insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

See, also, *Phoenix Mut. Life Ins. Co. v. Doster,* 106 U. S. 30, 1 Sup. Ct. 18, 27 L. Ed. 65.

It is said in Joyce on Insurance, sec. 3362, that if notice and proof of loss are given the insurer, which it considers in any way defective, good faith requires that it should notify the insured of such fact within a reasonable time. If, however, it should fail so to do, and remain silent, or proceed to negotiate with the insured as if the proof was sufficient, or proceed with-

out referring to any defect therein, then it will be estopped from setting up, as a defense to an action on the policy, the fact that the proof of loss is defective.

The letter of September 2nd, heretofore referred to, contained a notice demanding of plaintiff that she appear and submit to an examination under oath, relative to the facts and circumstances surrounding the origin of the fire, and as to the ownership, value, and incumbrance of the property insured under its policy. The place of meeting was to be at Lindsay on September 14th. This authority was exercised by the insurer pursuant to an additional provision of the policy. While it was no part of the proof of loss *(Winnesceik Ins. Co. v. Schueller,* 60 Ill. 465), it was a reasonable requirement *(Harris et al. v. Phoenix Ins. Co.,* 35 Conn. 310; *Firemen's Fund Ins. Co. v. Sims, Trustee,* 115 Ga. 939, 42 S. E. 269; *Bonner v. Home Ins. Co.,* 13 Wis. 677; *Southern Home Ins. Co. v. Putnal,* 57 Fla. 199, 49 South. 922; *Citizens' Insurance Co. v. Herpolsheimer,* 77 Neb. 232, 109 N. W. 160; *Fleisch v. Ins. Co. of N. A.,* 58 Mo. App. 596; *Gross v. St. Paul F. & M. Ins. Co.,* [C. C.] 22 Fed. 74; *Clafflin et al v. Commonwealth Ins. Co.,* 76 U. S. 81, 3 Sup. Ct. 507, 28 L. Ed. 76).

The contention of the plaintiff, however, was not that she refused unconditionally to submit to an examination under oath by some person named by the insurer, but that she demanded the right to have her attorney appear and represent her at such examination; that at the time her attorney was unable to be present, which fact was communicated by her to Nelson, who thereupon excused her from such examination; and that no further notice or demand in this regard was ever made upon her. There can be no doubt of plaintiff's right to be represented by an attorney while submitting herself to an examination under oath by the company's representative. Special agents and insurance adjusters, who engage in the settlement of insurance losses, are men skilled in their profession, and as a rule are familiar, in a degree at least, with the law of insurance; their employment

makes it their duty to represent, not the insured, but the insurer. It is therefore but just that the insured should have the right to be represented by counsel when being examined under oath, relative to the loss. *Thomas v. Burlington Ins. Co.,* 47 Mo. App. 169; *American Central Ins. Co. v. Simpson,* 43 Ill. App. 98; note to *Porter v. Traders' Ins. Co.,* 164 N. Y. 504, 58 N. E. 641, 52 L. R. A. 424, 426, 427. We hold, therefore, that plaintiff was clearly within her rights when she demanded of the adjuster the privilege of having her attorney present at the examination. It is true that plaintiff's testimony, relative to a demand to be represented by counsel, and that she was thereafter excused from attending the examination by Mr. Nelson, was denied by the latter. Upon this issue of fact we are concluded by the verdict of the jury.

Under the evidence in this case, there can be no question that plaintiff sustained an honest loss. It was not denied that at the time of the fire the policy was in full force; that the building was totally destroyed; that the company was immediately informed of the loss; that an effort was made to furnish the company with all the information called for; and that an independent investigation was made by the representative of the adjustment company. There was sufficient proof of a waiver of formal proof of loss to authorize the verdict of the jury.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.