## QUEEN INS. CO. OF AMERICA v. BAKER.

No. 25082.     Oct. 22, 1935.

A. K. Swann, for plaintiff in error.

J. J. Henderson and Quinn Dickason, for defendant in error.

PER CURIAM. Herein the parties will be referred to as they appeared in the trial court. The facts out of which this action arose briefly are as follows:

Upon application of the plaintiff the defendant executed a policy of fire insurance, insuring the plaintiff against loss by fire of certain personal effects, household goods and furniture contained in plaintiff's home. The amount of the policy was in the sum of $2,-700, covering a period from August 8, 1931, to August 8, 1932. The policy was issued through the defendant's local agency, and, as had been the custom of plaintiff in connection with other insurance for several years prior to the issuance of this policy, the

plaintiff left the same in the possession of the local agency.

During the period of the policy's effectiveness, and about the 6th day of December, 1931, plaintiff's home and the insured property were partially destroyed by fire. Immediately thereafter, plaintiff went to the office of the local agency and asked for blank forms upon which to make out proofs of loss. An employee of the agency referred the plaintiff to the adjustment company. There the adjuster refused to give plaintiff the blank forms which she requested. Thereupon plaintiff sought the aid of an attorney, who wrote the defendant under date of December 31st; enclosing a list of the furniture and goods which plaintiff claimed had been destroyed by the fire. The letter was as follows:

"F. C. Swindell
"Attorney at Law
"926 Exchange Bank Building
"Tulsa, Oklahoma.
"December 31, 1931.
"Queen Insurance Company of America,
"% Insurance Agency,
"Drew Building,
"Tulsa, Oklahoma.

"Gentlemen:

"In re: Policy No. 82159-Grace E. Baker.

"As attorney for Mrs. Grace E. Baker, I am enclosing herein the list of household goods which are covered by insurance in the above numbered policy, with an itemized statement of the approximate value of each article.

"You no doubt have been informed of the loss of this property caused by fire in the early part of December. If this statement is not sufficient please advise me at once in order that we may comply with your requests in making proof of loss.

"Yours very truly,
"FCS/B          F. C. Swindell."

The enclosed list was not sworn to by the plaintiff, nor was the same designated a proof of loss. Later, and before time to file proof of loss had expired, plaintiff's attorney wrote the defendant as follows:

"January 30, 1932.
"Queen Insurance Company of America,
"Drew Building,
"Tulsa, Oklahoma.

"Dear Sir:

"In re: Policy No. 82159-Grace E. Baker.

"Under date of December 31, 1931, I forwarded to you a copy of the list of property, and its valuation that was lost by fire on December 6, 1931. In the same letter I requested that you send me a form for making proof of loss in the event that this communication was insufficient. At this time I have had no reply of any kind from you. Will you please acknowledge receipt of the letter, and in addition thereto send me your proper form for making proof of loss?

"Yours very truly,
"F. C. Swindell."

The policy required the insured to submit to the insurance company within 60 days from the date of loss a sworn proof of loss. Two days after the expiration of this 60-day period plaintiff received from the insurance company a letter as follows:

"Tulsa, Oklahoma-February 5, 1932.
"Registered
"Grace E. Baker,
"502 New R. T. Daniel Bldg.,
"3rd and Boston
"Tulsa, Oklahoma.
"Re: Policy No. 82159 Queen Ins. Tulsa, Oklahoma Agency.

"Dear Madam:

"The undersigned insurance company is in receipt of a document dated December 31, 1931 addressed to the Queen Insurance Company of America, % the Insurance Agency, Drew Building, Tulsa, Oklahoma signed by Mr. F. C. Swindell as your attorney.

"If this is intended as complying with that portion of your policy relative to sworn statement in proof loss the same is unsatisfactory and is returned to you.

"You are notified and informed that the undersigned insurance company saves and reserved unto itself all the terms, provisions, conditions and forfeitures under the above captioned policy, with the intention at all times standing upon and asserting the same and you are further informed that a strict compliance with the said policy provisions will be required.

"You will please therefore govern yourself accordingly.

"Yours very truly,
"The Queen Insurance Company,
"By
"The Fuller Adjustment Company,
"By
"JAG:B    Joe A. Goodnough, Adjuster."

The defendant having denied liability, plaintiff brought the action in which this appeal is taken.

Upon a trial of the action a jury returned a verdict for the plaintiff in the sum of $2,000. Thereafter defendant's motion for

new trial was overruled, the court requiring plaintiff to file a remittitur in the sum of $500, and judgment accordingly was rendered against the defendant in the sum of $1,500.

Defendant complains that plaintiff's petition failed to state a cause of action, that plaintiff's evidence failed to prove a cause of action, and that the court improperly refused to give to the jury one of defendant's requested instructions. All of these assignments of error go to the question of whether or not the defendant waived compliance with the strict terms of the policy in connection with the submission of a proof of loss. Plaintiff in her petition pleaded such waiver, and both the allegations of the petition and the evidence introduced at the trial showed the facts hereinbefore related.

The evidence as to some of these facts was in sharp conflict. However, the jury has accepted plaintiff's version of the controverted questions and has rejected the version of the defendant. This court, therefore, may not inquire into the question of which version is correct, but must accept the plaintiff's version since there is competent evidence reasonably tending to support the same.

This court held in the case of Liverpool & London & Globe Insurance Co. v. Cargill, 44 Okla. 735, 145 P. 1134:

"When the insured, in good faith and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy as to proof of loss, good faith equally requires that the company shall notify him promptly of any objections thereto, so as to give him an opportunity to obviate them, and mere silence may so mislead him, to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel."

In 26 C. J. at page 400, it is said that the foregoing rule is especially applicable:

"Where insured inquires, in sending the proofs, whether further statements are required, or offers to make such further statements and furnish such further information as may be demanded."

In the instant case there was sufficient evidence upon which the jury could find that the defendant waived the "proof of loss" requirement of the policy. The defendant contends that there was no evidence introduced to prove that the plaintiff intended the unsworn list of destroyed articles as a proof of loss; further, that there was no evidence

to prove that the defendant understood that the plaintiff so intended. But both of the letters written by plaintiff's attorney to the defendant show upon their faces that the list furnished was intended as a compliance with the requirements of the policy as to proof of loss unless defendant should notify plaintiff that the defendant considered such list insufficient. Further, the insurance company was bound to have understood from these letters that, unless the company made objections to the statement furnished, the plaintiff intended the statement as a proof of loss and was attempting thereby to comply with the requirements of the policy, That the insurance company understood or presumed that the insurer intended the statement as a proof of loss and was attempting thereby to comply with the requirements of the policy is shown by the following statement in the letter of February 5th, which was written by the company after the time to file proof of loss had expired, to wit:

"If this is intended as complying with that portion of your policy relative to sworn statement in proof of loss, the same is unsatisfactory and is returned to you."

Under these circumstances good faith required the company promptly upon receipt of the letter to reject the statement and advise the plaintiff that the same would not be considered as a compliance with the terms and conditions of the policy, instead of waiting until the 60-day period had expired.

Defendant states in its brief that ordinarily defenses based upon the lack of a proof of loss are not urged seriously, but that in the instant case the defendant is compelled to urge these defenses in order to protect itself against the exorbitant, unreasonable and willfully fraudulent claim of the plaintiff. It may be stated in passing that the evidence in this case most certainly yields the inference that the plaintiff did not deal fairly with the defendant. The jury, of course, as will be seen later, found that the plaintiff was not guilty of making fraudulent demands, and this court is precluded by that finding, there being evidence to support the same. However, assuming that the plaintiff willfully attempted to defraud the insurance company by knowingly swearing that the destroyed property was of a value much greater than its actual value. this fact would justify the defendant in denying liability and in contesting the plaintiff's claim to the utmost. But it would not justify the defendant in failing to exercise good faith toward the plaintiff with reference to advis-

ing her of its objections to the intended proof of loss. The provision in insurance policies requiring a proof of loss is placed therein for the protection of the insurance company. It is there for the purpose of assuring that the company will promptly be informed of the insured's claim in connection with the circumstances under which the loss occurred and the extent of such loss. The provision should be used for that purpose and not as a trap by which the insurance company is enabled to defeat the demands of its policyholders. If the company conceives that a particular demand is unjust, it has a right to have that issue determined by an impartial and unprejudiced tribunal. But it will not be allowed to determine that issue for itself, and, taking the position that "the end justifies the means," lead the insured to believe that his attempt to comply with the requirements of the policy is sufficient, and then defeat his demand upon the ground that the attempt to comply with the requirements was insufficient. Of course, we are not to be understood as holding that noncompliance with the proof of loss requirement is not a defense in those cases in which the insurer has done nothing to mislead the insured in that connection.

On the issue which has been discussed the court instructed the jury as follows:

"You are further instructed that if you find and believe by a preponderance of the evidence that the plaintiff, acting through her attorney, plainly intended the itemized statement with the letter thereto attached, which has been introduced in evidence as plaintiff's exhibit 3, as a proof of loss, and the defendant understood therefrom that the plaintiff plainly intended the same to be a proof of loss, and with such knowledge failed to notify the plaintiff that it was insufficient, and the plaintiff relying upon the failure of the defendant to so notify her that such proof was insufficient, failed to submit a more formal and sworn proof, then and under such circumstances the conduct of the defendant would constitute a waiver of a sworn proof of loss.

"On the contrary, if the plaintiff did not plainly intend said letter and itemized statement as a proof of loss, or if the defendant did not understand therefrom that she intended the same as a proof of loss, or if she did not rely upon the silence of the defendant as to the sufficiency of the same, then the defendant would not be held to have waived the filing of a sworn formal proof of loss.

"In this connection you are told that the mere failure or refusal of the defendant to furnish to the plaintiff blanks for formal proof of loss would of itself not constitute a waiver of that provision of the policy requiring sworn proof of loss; nor would the fact that the adjuster for the defendant investigated said loss of itself constitute a waiver of the requirement for a sworn proof of loss."

This instruction properly stated the law and defendant admits as much in its brief. But it contends that the court should have gone further and instructed the jury that the silence of the insurance company, in order to constitute a waiver, must be found to have misled plaintiff to her prejudice. The jury in returning a verdict for the plaintiff necessarily found, under the instruction given, that the plaintiff, after the defendant's receipt of her statement and letters, relied upon the defendant's silence as a waiver of objection to the intended proof of loss, and that by reason of such reliance she failed to submit a more formal proof of loss. The jury was sufficiently advised that in order to constitute a waiver by estoppel the plaintiff must have been misled, and they necessarily found that such was the fact. And, of course, the "detriment" or "prejudice" to which she was misled was that which would result if the estoppel should not be allowed, viz., her failure to recover. Defendant argues that in order to invoke the doctrine of waiver by estoppel a party must, as a result of the inequitable conduct of the other party, have suffered some detriment or injury without regard to whether or not the estoppel is allowed. But such is not the law. 10 R. C. L. 697. We cannot presume in the face of the findings of the jury, instructed as it was, that the plaintiff deliberately forfeited her rights under the policy.

Defendant's requested instruction, which the court refused to give to the jury, was merely an elaboration upon the more concise instruction set out above. The requested instruction merely emphasized that no one of the various actions of the defendant, standing alone, would constitute a waiver, and it failed sufficiently to advise the jury just what facts and circumstances, taken in connection with one another, they might consider in determining whether there was a waiver. No error was committed by the court in its instructions.

Another of the defenses of the defendant was based upon the policy's provision which is as follows:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or

circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated therein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The plaintiff in her verified petition alleged that the destroyed property was of the value of $4,166. In her testimony given at the trial she stated that the value of a piano which was burned was in the sum of $1,000. It also appears that substantially the same testimony was given in a prior trial, the outcome of which trial was a dismissal by the plaintiff of her action prior to submission of the case. The jury, assuming that it followed the instructions of the court, by its verdict found that three-fourths of the value of the destroyed property was in the sum of $2,000 (this for the reason that the court instructed the jury that under the provisions of the policy the insured was entitled to recover only three-fourths of the value of the destroyed property). The jury, therefore, believed that the true value of the destroyed property was $2,666.66, rather than $4,166 as claimed by plaintiff. The jury further found in response to a special interrogatory submitted to it by the court that the true value of the piano in question was $100, rather than $1,000, as claimed by plaintiff. The defendant contends that these facts, that is, the valuation placed upon the property by the plaintiff as compared with the true value of the property as determined by the jury, show as a matter of law that the plaintiff was guilty of gross overvaluation of such a nature as to render the policy void, that is, that the undisputed facts are such as to overcome the presumption of honesty, preclude the possibility of honest mistake, and prevent escape from the conclusion that the plaintiff was guilty of willful and fraudulent claims. We cannot agree with this contention. It appears that the valuation of $4,166 originally placed upon the destroyed property included some items about the ownership or value of which the plaintiff later admitted she was mistaken, and it included a number of items which were taken from the consideration of the jury by the court for the reason that the same were not covered by the insurance policy. It further appears that as to several items, including the piano, the values placed thereon by the plaintiff included a sentimental value. This the plaintiff admitted in her testimony. We cannot say that the evidence conclusively shows that the plaintiff was guilty of

false swearing in connection with her claims as to the value of the destroyed property. The issue of whether or not the plaintiff placed upon the destroyed property a fraudulent valuation was covered by the court in its instructions to the jury. The jury, by its general verdict, and by its answer to a special interrogatory, found against the defendant upon that issue also. We are not prepared to say that upon this question of fact there is no evidence reasonably tending to support the verdict of the jury.

Together with the general issue the court submitted to the jury two special interrogatories, the first inquiring as to whether or not the plaintiff was guilty of willfully gross overvaluation of the property which she claimed was lost or damaged by fire, the second inquiring as to the value of the piano in question. The jury answered the first interrogatory in the negative and found the value of the piano to be $100.

The defendant complains of the trial court's ruling in denying defendant's motion for judgment notwithstanding the verdict of the jury. This court, in a number of cases, has announced the rule that a party is entitled to a judgment non obstante veredicto only where such party would be entitled to judgment on the pleadings or where there are special findings of fact contrary to the general verdict. See Hanna v. Gregg et al., 92 Okla. 34, 217 P. 434. In the instant case it is readily apparent that the special findings of the jury were not contrary to the general verdict, but were consistent therewith.

Defendant's next contention is that the verdict of the jury was contrary to and in disregard of the court's instructions, and that the same was so excessive as to appear to have been given under or as a result of passion and prejudice. Defendant shows in its brief that, as a matter of mathematical certainty, the jury's verdict was in a sum slightly greater than the maximum verdict which could have been returned under the evidence and the instructions of the court. Considering the court's instructions with reference to the "three-fourths value" clause of the policy, and considering the instructions of the court and the admissions of the plaintiff which took from the consideration of the jury a number of items for which recovery originally was claimed, and further considering the fact that the jury placed a value of only $100 upon the piano in question, it is readily apparent that the award of $2,000 was more than the jury was

278

justified in granting—even under the plaintiff's evidence as to the value of the remaining items. However, we cannot say this slight excessiveness in the verdict shows that the same was influenced by passion or prejudice. Reed v. Fichencord, 96 Okla. 3, 219 P. 937, is a case in point upon this question. The vice of the excessiveness was removed from the verdict by the remittitur which the trial court ordered as a condition to its denial of a new trial.

This court, in the case of Cosden Pipe Line Co. v. Seybold, 168 Okla. 36, 31 P. (2d) 605, approved the general rule stated in 20 R. C. L. at page 317. to the effect that a remittitur is permissible where the verdict is excessive whether the excess is susceptible of computation or not. The verdict as reduced is not excessive; it has the approval of the trial court, and there is evidence reasonably tending to support the same. This court, therefore, cannot disturb the judgment of the court below.

The case was well tried by counsel for the defendant and has been ably briefed in this court. The great difficulty with which defendant is met in this case is found in the fact that upon all of the issues submitted to the jury, the findings were in favor of the plaintiff. The rule is old in this state that, where a jury has been properly instructed upon the issues and where no errors of law appear to have been made by the trial court, and where there is evidence reasonably tending to support the jury's verdict, this court will not disturb such verdict. See in this connection the recent decision of this court in the case of Reviere v. Payne, 166 Okla. 150, 26 P. (2d) 734.

The judgment of the lower court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Stephen Chandler, Mart Brown, and John Cantrell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar. appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Chandler and approved by Mr. Brown and Mr. Cantrell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.