## SOVEREIGN CAMP, W. O. W., v. CHAFFER.

No. 11185—Opinion Filed May 15, 1923.

Rehearing Denied July 31, 1923.

**1. Insurance — Fraternal Insurance—Reinstatement of Members—Waiver of Conditions.**

Held, that the facts pleaded in this case constituted a sufficient plea of waiver of the conditions of the constitution and laws of the W. O. W., a fraternal benefit society, requiring a certificate of good health before reinstatement.

**2. Same—Dues of Member — Agency of Local Clerk.**

The facts in this case justify the conclusion that the clerk of the local W. O. W. camp in collecting, receipting for, and transmitting the dues of the member was acting as the agent of the sovereign camp and not as the agent of the insured.

**3. Appeal and Error—Review—Sufficiency of Instructions and Evidence.**

Where the instructions of the court fairly submit the issues of fact to the jury, and there is testimony reasonably tending to support the verdict and judgment, the judgment will not be disturbed on appeal.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from County Court, Pontotoc County; Orel Busby, Judge.

Action by Josie M. Chaffer against Sovereign Camp of Woodman of the World to collect life insurance. Judgment for plaintiff, and defendant brings error. Affirmed.

Moore & West, for plaintiff in error.

C. F. Green, for defendant in error.

Opinion by SHACKELFORD, C. This action was commenced in the county court of Pontotoc county, Oklahoma, on the 9th day of May, 1919, by the defendant in error, Josie M. Chaffer, plaintiff below, against the plaintiff in error, Sovereign Camp of the Woodmen of the World, a fraternal beneficiary association, defendant below. The cause was tried to a jury on the plaintiff's first amended petition, the answer of the defendant and the reply of the plaintiff, on the 23rd day of October, 1919. The trial resulted in a verdict in favor of the plaintiff and against the defendant for the sum of $1,000, upon which verdict judgment was entered in due course, and the defendant appealed.

The facts pertinent to a determination of this case are, that one R. A. Chaffer, the husband of the plaintiff, Josie M. Chaffer, joined a Woodmen of the World Camp at Holdenville, Okla., on or about the 25th day of March, 1912, and beneficiary certificate number 24491 was issued to him in the sum of $1,000, in which certificate the plaintiff, Josie M. Chaffer, wife of the member, was named beneficiary. This certificate was to be kept in force by monthly payments of $1.25, to be made by the holder.

It appears that the insured changed his membership to Cornish Camp at Cornish, Okla., the camp afterwards being moved to Ringling, Okla., and being known as Cornish Camp No. 330. Later on the insured moved to the vicinity of Ada, Okla.

It appears that one Chas. Harris had been the clerk of the Woodman camp at Ringling for about eight years next before the trial of this case. It was a part of the duties of the clerk to receive, receipt for, and remit the monthly dues of the lodge. It appears from the undisputed testimony in the trial of the case, that Chas. Harris, at times, took care of the dues and monthly payments owing by R. A. Chaffer on his policy of insurance, and that he, the clerk, suspended Chaffer for assessment No. 5 (assessment for May) in the year 1918, and that later on the clerk accepted from Chaffer the amount of assessment No. 5, and reinstated him so that his insurance was again in force. That at the time of such reinstatement, no statement or warranty of good health was either asked for of Chaffer or given by him. Assessments Nos. 7, 8 and 9 for the year 1918, being the monthly dues for July, August, and September of said year, were not paid by Chaffer until the 7th day of October, 1918, when payment was made and a receipt issued to R. A. Chaffer, signed by "Chas. Harris, Clerk Cornish Camp No. 330." The assessments for October and November, the same being assessments Nos. 10 and 11, in the year 1918, were paid and a receipt issued to R. A. Chaffer on the 19th day of November, 1918, the receipt being signed "Chas. Harris, Clerk Cornish Camp No. 330." The items shown on this receipt are:

Sovereign camp fund_____$2.50
Camp monthly dues to December 1,

1918 _____  .50
War tax _____  .20

It is to be inferred from this receipt that this last payment was in full of all dues and assessments to December 1, 1918. Both of the receipts above referred to carried the following statement as a part thereof:

"If any part of the above amount is paid for the purpose of reinstating the sovereign so paying, it is received upon the condition and agreement that I receive and hold the same in trust for him, pending necessary action upon his application· for reinstatement, and that he has no claim upon the order until such application is accepted in accordance with the constitution and laws. If such application is not accepted, the above sum to be refunded. This receipt authorizes any Consul Commander to communicate to S. A. P. W. to holder' thereof."

The insured, R. A. Chaffer, died on the 24th day of November, 1918, near Ada, Okla. Chas. Harris, clerk of the Cornish Camp 330, testified that he suspended Chaffer for the nonpayment of the October or No. 10 assessment for the year 1918. The policy issued to Chaffer seems to be the usual form and makes the constitution and laws a part of the contract of insurance. The policy of insurance bears this statement as a part thereof:

#### "Important.

"No camp nor officer' thereof, nor any officer, employe or agent of the sovereign camp has authority to waive any of the conditions of this beneficiary certificate, or of the constitution and laws of the order."

Parts of the constitution and laws, which seem to have been made a part of the contract, are as follows:

"Sec. 112. (b) If he fails to make any such payments on or before the first day of the month following, he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

"Sec. 116. (a) Should a suspended member pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension and if in good health and not addicted to the excessive use of intoxicants or narcotics, he shall be restored to membership and his beneficiary certificate again become valid."

"(b) After the expiration of ten days and within three months from the date of suspension of a suspended member, to reinstate he must pay to the clerk of his camp all arrearages and dues and deliver to him a written statement and warranty signed by himself and witnessed that he is in good health and not addicted to the excessive use of intoxicants or narcotics as a condition precedent to reinstatement, and waiving all rights hereto if such written statement and warranty be untrue."

It appears from the testimony that R. A. Chaffer was in good health until within a few days of his death. Sometime in March, 1919, the Sovereign Camp of the Woodmen of the World, tendered to the plaintiff, Mrs. Josie M. Chaffer, check for $2.70 as a refund of the assessments for October and November, 1918, which she refused to accept. Payment of the policy was refused, no blanks were furnished for the death proofs, and this suit followed.

The plaintiff in error argues seven assignments of error, upon which it relies for a reversal of this judgment. Consideration of the second and third assignments will, in effect, dispose of the others. The second is, that the court erred in permitting the plaintiff to introduce evidence in support of a waiver, no waiver having been pleaded. The third is that the court erred in refusing to direct a verdict for the defendant and permitting the cause to go to the jury, since no waiver had been pleaded, and proof had been offered to support the affirmative defense pleaded by the defendant.

The plaintiff in error insists that the judgment of the court below was wrong for the reason that the insured was suspended because the October, 1918, assessment was not paid within the time provided by the contract of insurance, and he was not reinstated as required by the constitution and laws of the order. The particular thing complained of is that under the constitution and laws of the order, the reinstatement could not be accomplished unless the insured should pay all past due assessments and furnish a written warranty of good health. The past due assessment was paid, beyond question, but no written statement or warranty was given showing the insured in good health.

Now, the main question determinative of this case is, Does the first amended petition of the plaintiff charge such a state of facts as would dispense with such written warranty of good health, and does the testimony support such charge, if sufficiently made in the pleading? The plaintiff in error contends that there was no sufficient charge in the amended petition showing that the health warranty had been waived. It is not seriously contended that such waiver could not be made by the collecting agency of the local lodge, nor could such contention be sustained under the holdings of this court.

The plaintiff, in her first amended petition charged the facts to be that about a year prior to the death of the insured, the collector of the local camp agreed to not suspend the insured for the nonpayment of the monthly assessments, but would carry him until such time as it was convenient for him to make a remittance, and pursuant to

such agreement that the clerk did carry the insured from time to time. She further charged the facts to be that the clerk carried Chaffer for assessments Nos. 7, 8 and 9, being the July, August, and September assessments, to the 7th day of October, 1918, when the same were paid, accepted and remitted to the Sovereign Camp without any request for a good health warranty. She further charges that the insured was suspended for assessment No. 5, the May, 1918, assessment, and that he afterwards paid the same and was reinstated without a certificate of good health. It is further charged that the October and November, 1918, assessments were paid on the 19th day of November, 1918. It appears from the plaintiff's first amended petition that the same thing happened with reference to the October assessment that happened with the May assessment; that is, the money was paid and received by the clerk, and no certificate of good health was given or asked, but a receipt was issued to Chaffer showing that he had paid the assessments for October and November.

We think that the allegations in the first amended petition sufficiently pleaded a waiver of the provisions in the constitution and laws of the order requiring a written warranty of good health, at the time the payment was made before reinstatement would be authorized. This is true, even if the very fact of the insured making the payment for October, and the collecting officer receiving the same and issuing a receipt without demanding a warranty of good health in writing, was not in itself a sufficient waiver of the requirement of the constitution and laws of the order. We take it that this was the purpose of pleading the facts referred to, and the same is sufficient, particularly since no motion was leveled against it, to make a more definite and certain statement.

Edwards v. Sovereign Camp, W. O. W., 61 Okla. 243, 161 Pac. 170, relied upon by the plaintiff in error, is not in point here, since in that case there was no attempt to plead a waiver. Aside from that, it is to be noted that in the opinion in that case it is stated:

"At the trial it clearly appeared that deceased was in default on dues upon the certificate for such a period that by the constitution and laws of the order, made a part of the certificate by its terms, the certificate had lapsed."

The cases cited in that case by the learned commissioner, in support of his opinion, do not appear to support the contention of plaintiff in error any stronger than the main

case, and for the most part are not in point here.

In the case at bar, it appears by the undisputed testimony that the October dues had been paid and a receipt issued therefor.

We think the waiver was sufficiently pleaded to authorize the court to let the proof, offered by the plaintiff below to show the waiver, go to the jury.

The third proposition argued by the plaintiff in error is, that the court erred in refusing to direct a verdict. There was little or no dispute as to the facts, and the main questions to be decided now are: (1) Did the clerk of the camp of which Chaffer was a member have the power and authority to waive the conditions of the constitution and laws of the order? and (2) Did his conduct toward Chaffer amount to such waiver?

In determining the first of these questions we shall examine the question as to whether the clerk was acting as the agent of the Sovereign Camp or the agent of Chaffer. The clerk was the officer elected or appointed to look after the collections and receipts for dues and assessments paid, and to remit them to the Sovereign Camp, and to transact other business for the local camp.

In Grand Lodge, United Brothers of Friendship, etc., v. Carroll, 73 Oklahoma, 174 Pac. 767, at page 769, this court said:

"The subordinate lodge is the agent of the parent organization and therefore as such the parent organization is conclusively bound by whatever action was taken by the subordinate organization."

In Modern Woodmen of America v. Weekley, 42 Okla. 25, 139 Pac. 1138, on page 29 of the opinion, the court, having under consideration section 2877 of the by-laws of the order, which makes the clerk of the local camp the agent of the camp and not the agent of the society by its express terms, said:

"Notwithstanding the provision of section 287, some courts hold that the clerk of the local camp is the agent of the head camp"

—and cites Modern Woodmen of America v. Breckenridge, 75 Kan. 373, and Pringle v. Modern Woodmen of America, 76 Neb. 381, in support of the statement.

In Knights of the Maccabees v. Johnson, 79 Okla. 77, 185 Pac. 82, at page 79, this court said:

"This testimony supports the finding made by the trial court, and from which we are constrained to hold that the recorder of the

local camp was the agent of the society, and acted in its behalf, notwithstanding the provisions of the by-laws to the contrary."

And in the second syllabus in the case, the law is declared as follows:

"Under the facts set out in the opinion it is held that the recorder of the local branch of the mutual benefit society, in collecting the monthly dues and assessments from the members, acted as the agent of the general society, and not of the individual members, the provisions of the by-laws to the contrary notwithstanding."

In the case from which these quotations are taken, it was shown to have been the habit of the collecting recorder to collect dues at a different time than that designated by the laws of the order.

From these authorities we reach the conclusion that the clerk of Cornish Camp No. 330, W. O. W., in collecting, receipting for, and transmitting the dues and assessments of Chaffer, was acting as the agent of the Sovereign Camp and not as the agent of Chaffer, notwithstanding any provisions in the constitution and laws of the order to the contrary, and being the agent of the Sovereign Camp, and by letting dues and assessments of Chaffer pass uncollected from month to month, as high as three assessments at one time, and for one month on two other occasions, and then accepting the dues and assessments charged against Chaffer, and issuing him a receipt therefor without requiring a written warranty of good health, and remitting the same to the Sovereign Camp, and there the money was retained without requiring a written warranty of good health, the clerk did exercise the power and authority to waive the certificate of good health, and such action was ratified and acquiesced in by the Sovereign Camp and became the waiver of the Sovereign Camp itself.

The proof shows that Chaffer had been delinquent and was suspended for nonpayment of dues other than for October, 1918. That he had been suspended for the nonpayment of the May, 1918, dues, afterwards paid the same, and was reinstated without either the clerk or the Sovereign Camp calling upon him for a warranty of good health. He was delinquent in the payment of the assessments for July, August, and September, 1918, and on the 7th day of October he paid these assessments and receipt was issued to him showing that he had paid them and was in good standing, and neither the clerk nor the Sovereign Camp demanded that he furnish a written warranty of good health.

He was delinquent in the October assessment and the proof offered on the part of the plaintiff in error was that the clerk suspended him for such delinquency. There was no proof that he was notified that he was suspended for such delinquency, unless it should be inferred from the fact that 20 cents war tax was charged in the receipt issued to Chaffer on the 19th of November, 1918. Notwithstanding the fact that he was delinquent in taking care of the October, 1918, assessment, and that the Sovereign Camp had been notified of it, yet, when he tendered payment of the dues for October, 1918, together with the dues for November, to the clerk, the clerk accepted the same and issued a receipt therefor and Chaffer's attention was not called to the necessity of furnishing a written warranty of good health. The November dues were not due, and Chaffer had, under the rules of the order, until December 1, 1918, to pay the November assessment. The receipt was issued not only for the past due assessment, but for one that was not yet due.

In the case of Grand Lodge A. O. U. W. v. Smith, 92 Pac. 710, the Kansas court, passing on a similar provision, declared the law to be that:

"The demand, receipt and retention by the benefit society of an assessment on which the member is not in default, with one which was overdue, waives the forfeiture growing out of the delay of nonpayment."

We cannot say in this case that the conduct of the clerk of Cornish Camp No. 330 toward Chaffer was not such as would waive the requirement of the constitution and laws of the order that he must furnish a written warranty of good health before he could be reinstated. It is evident that the clerk of the local camp thought Chaffer's conduct was such as would justify him in receiving the dues, issuing the receipt therefor, and remitting the same to the Sovereign Camp.

It appears that Chaffer sickened and died suddenly. That very close to the time of his death he appeared to be in better than his usual health, so that it is probable that if the clerk of the local camp had called upon Chaffer to furnish a written warranty of good health, he could well have done so truthfully.

We have carefully examined the instructions of the court complained of, and also the instructions requested by the plaintiff in error upon the trial, and all other assignments of error argued in the brief of the plaintiff in error, and find no error in the giving of the instructions complained of, or

in refusing those requested. The instructions of the court fairly submitted the cause to the jury, and the evidence was ample to justify the verdict returned.

Finding no substantial error in the trial of the case in the court below, and that the verdict of the jury and the judgment of the court were amply supported by the evidence, we recommend that the judgment be affirmed.

By the Court: It is so ordered.