OLD SURETY LIFE INSURANCE COM-
PANY, a corporation, Plaintiff
in Error,

v.

Lula MILLER, Defendant in Error.

No. 38197.

Supreme Court of Oklahoma.

Dec. 16, 1958.

Mauntel & Doolin and Houts & Houts, Alva, for plaintiff in error.

Kerr, Lambert, Conn & Roberts, Ada, for defendant in error.

CARLILE, Justice.

This is an action brought by Lula Miller against defendant, Old Surety Life Insurance Company, to recover on a life insurance policy. The policy issued by defendant is a family group policy issued on the life of Isaac McClure and others payable to plaintiff as beneficiary. Coverage under the policy was in the sum of $300 and double that amount in the event insured's death was caused by accidental means. The policy issued by defendant is a non-participating twenty-year double-indemnity policy and was issued upon the consideration of the payment of monthly premiums. The policy contains the following provisions:

"* * * A grace of thirty-one (31) days shall be granted for the payment of each premium after the first, during which days of grace the insurance shall continue in force. * * *

"Reinstatement—This policy may be reinstated at any time within three (3) years after default in payment of premiums upon evidence of the Insured's then insurability satisfactory to the Company and the payment of all overdue premiums with interest at the rate of six (6) per cent per annum."

On the 12th day of March, 1957, insured, Isaac McClure died as the result of an accidental drowning and on the 11th day of June, 1957, plaintiff commenced this action.

Defendant in its answer defended on the theory that the policy was not in force and effect at the time of insured's death; that the policy had then lapsed because of the failure to pay premium due on the 24th day of February, 1957, and further answered denying liability on the ground that plaintiff had failed to furnish proof of death of insured in the manner and form as provided by the policy. Plaintiff filed a reply to defendant's answer alleging:

"* * * that on the 13th day of March, 1957, the defendant was advised by telephone of the accidental death of Isaac C. McClure and that written proof of death was not furnished by plaintiff for the reason that the defendant denied liability on the theory that the policy was not in force and effect and although form for Proof of Death was requested, the same was not furnished by defendant.

"Plaintiff further alleges that the policy was in full force and effect and that the premium thereon had been fully prepaid at the time of the death of Isaac C. McClure and that the defendant over a long period of time has accepted delinquent payment of premiums and has re-instated the policy without requiring a good health statement from insured, all of which is sufficient to estop defendant from now denying that the policy was in full force and effect."

A jury was waived and the case was tried to the court. The case was submitted on stipulation of facts and oral testimony.

In addition to the facts above stated, the following facts are stipulated: The policy of insurance was permitted to lapse for nonpayment of premiums on February 24, 1944; that on February 26, 1944, premiums sufficient to re-instate the policy was remitted to defendant; that the policy was permitted to lapse for nonpayment of premiums May 25, 1946; that on June 1, 1946, a remittance of the premiums sufficient to reinstate the policy was mailed to and received by defendant company. The policy of insurance was again permitted to lapse for nonpayment of premiums March 27, 1951; that on March 31, 1957, remittance of premiums sufficient to reinstate the policy was received by defendant company. On each of said above occasions the defendant

company wrote a letter acknowledging receipt of the premiums and each letter contained the following statement: "Please sign the good health statement at the bottom of this sheet." It is further stipulated:

"That said policy of insurance was permitted to lapse for non-payment of premiums on February 24, 1957; that on March 7, 1957, a remittance in the form of a post office money order for the sum of $5.55 was mailed by the plaintiff to the company with the intent that the same be used for payment of one quarterly premium on the policy, and which remittance was accompanied by a letter written by the plaintiff under date of March 6, 1957, a copy of which is hereto attached, marked Exhibit 'D' and made a part hereof by this reference; and that said remittance and letter were received by the company on March 11, 1957; and that the post office money order above referred to was returned to the plaintiff on July 8, 1957,

"That on March 12, 1957, at approximately 3:00 o'clock P.M., the company received notification by telephone from a representative of the Smith Funeral Home at Ada, Oklahoma, of the death of Isaac McClure.

"That Isaac McClure died on March 12, 1957, at approximately 1:00 P.M.; and that the immediate and proximate cause of his death was drowning.

"That the defendant has refused to furnish the plaintiff with forms for the purpose of submitting a claim based upon the death of Isaac McClure upon the ground that the policy was not in force at the time his death occurred."

In addition to the stipulated facts, plaintiff testified that on December 24, 1946, a premium became due after the thirty-one-day grace period expired and three days thereafter she remitted a premium to renew the policy and on that occasion the company accepted the premium without her being required to furnish a statement of good health; that on each of the occasions above referred to when she received the letter acknowledging the premiums enclosing form of certificate of good health, she signed the form and returned it to the defendant; that she had on no occasions furnished a good health certificate unless requested or required by defendant company. She was led to believe that such certificate was not necessary to renew the policy unless requested and required by defendant. She further testified that insured, Isaac McClure was in good health on March 7, 1957, the day on which she remitted the last premium.

Defendant offered the testimony of C. M. Wyckoff, vice president of the company. He testified substantially to the same state of facts as set forth in the stipulation of facts and further testified that on no occasion, except upon the occasions testified to by plaintiff, did it ever re-instate the policy after the lapse for nonpayment of premiums on the payment of premiums alone, but on all other occasions, in addition to the payment of premiums, it required evidence showing insured's then insurability before reinstating the policy.

The trial court found the facts as stipulated and further found:

"The policy of insurance was permitted to lapse for non-payment of premiums on February 24, 1957. On March 7, 1957, a remittance in the form of a post office money order was mailed by the plaintiff to the defendant with the intent that the same be used for payment of one quarterly premium on the policy. This remittance was received by the defendant on March 11, 1957, and the same was returned to the plaintiff on July 8, 1957."

Upon such findings the court, among other conclusions, concluded as follows:

"The conduct of the defendant over a period of years was sufficient to lead the plaintiff, as an ordinarily prudent person, to believe that the delayed payment of premiums would be accepted by the defendant and that plaintiff

would not be required to furnish evidence of insurability as was done in January, 1947, or that if such evidence was required, that the defendant would send plaintiff a letter similar to the ones she received in February, 1944, May, 1946, and March, 1951, said letters containing a statement on the bottom thereof that she and the insured were in good health. That the defendant by its course of dealing with the plaintiff over a period of years has adopted a method of reinstating this policy different from that required by the terms of the policy.

"The plaintiff, as a reasonably prudent person, had a right to believe that strict compliance with the terms of the policy would not be required when the policy involved herein lapsed in February, 1957.

"The death of Isaac C. McClure on March 12, 1957, was caused by accidental drowning and not by any disease existing on March 7, 1957, the date the premium was mailed; therefore, the failure of plaintiff to send in a statement of good health on March 7, 1957, was not prejudicial to the rights of the defendant.

"The insurer may, by a course of conduct, be estopped from asserting cessation or lapse of policy where the insurer has, by a course of action or custom, accepted premiums out of time and without compliance with the technical terms of the policy.

"The conduct of the defendant in this case is sufficient to estop defendant from asserting that the policy had lapsed because the plaintiff did not send in a statement of good health at the time she forwarded the remittance of premium."

The trial court, upon findings and conclusions, entered judgment in favor of plaintiff in the sum of $600.

Defendant appeals and contends that the court erred in a point of law by holding that the conduct of defendant company was sufficient to estop it from asserting that the policy had lapsed at the time of the death of the insured.

It is the contention of defendant since the evidence shows that the policy had lapsed for nonpayment of premiums at the time of insured's death, and that at the time plaintiff remitted the premiums then due she did not accompany the remittance with evidence showing insured's then insurability, she cannot recover on the policy.

Plaintiff, however, contends that defendant, by its acts and conduct, waived such requirement and is now estopped to assert that the policy was not in full force and effect at the time of insured's death. We think the evidence above detailed is sufficient to sustain this contention, and the trial court so found and concluded.

In 29 Am.Jur. Insurance, Section 800, it is said:

"It is clear that a provision for forfeiture or suspension of an insurance policy for nonpayment of premiums or assessments, or for a breach of a condition or warranty, is inserted for the benefit of the insurer, and it may waive such a provision or be estopped to deny its breach. * * * and it may waive a provision after, as well as before, a forfeiture has occurred. * * * What is more, since forfeitures of insurance policies are not favored by the courts, they are always prompt to seize upon any circumstances that indicate an election to waive a forfeiture or an agreement to do so, on which the party has relied and acted."

In Liverpool & London & Globe Ins. Co. v. Cargill, 44 Okl. 735, 145 P. 1134, this court held:

"Any agreement, declaration, or course of action on the part of the insurance company, which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part,

will estop the company from insisting upon the forfeiture, although it might be claimed under the express letter of the contract."

In Pacific Mut. Life Ins. Co. of California v. McDowell, 42 Okl. 300, 141 P. 273, L.R.A.1918E, 391, we said:

"Where a policy insures against accident for a period of one month only, but provides that it may be renewed and kept in force from month to month by the payment of monthly premiums on a certain day of each month, and that it shall be void and of no force and effect if such payments are not made on or before the day mentioned in the policy, such forfeiting provisions, being inserted solely for the benefit of the insurance company, may be waived by the company if it so desires, and such waiver on the part of the insurance company may be inferred from acts, as well as words."

See, also, Sovereign Camp, W.O.W. v. Chaffer, 92 Okl. 41, 217 P. 353. In that case, under the facts therein stated, we held that the Sovereign Camp, by its acts and conduct, waived the requirement that in addition to the payment of premiums then due on a lapsed policy the premium should be accompanied with a certificate of good health in order to have the policy reinstated.

In New York Life Ins. Co. v. Eggleston, 96 U.S. 572, 24 L.Ed. 841, the court held that any agreement, declaration, or course of action on the part of the insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.

The evidence discloses that the policy sued upon was permitted to lapse for nonpayment of premiums on February 24, 1957; that on March 7, 1957, a remittance in the form of a post office money order for a sum sufficient to re-instate the policy was mailed by the plaintiff to the company, which remittance the company received and retained until July 8, 1957, but the premium was not accompanied by a certificate showing that insured was then in good health, nor did the defendant request such certificate. Plaintiff, however, testified that insured was in good health at the time she remitted the premium and defendant does not otherwise contend. Insured did not die as the result of disease, but died as a result of accidental drowning. The equities are strongly in favor of plaintiff. It has been said that slight evidence will sustain a waiver against an insurance company where the equities are in favor of the insured. Bonenfant v. American Fire Ins. Co., 76 Mich. 653, 43 N.W. 682; German Ins. Co. v. Gibson, 53 Ark. 494, 14 S.W. 672.

We conclude that the findings and conclusions and judgment of the trial court are sustained by sufficient evidence and are not contrary to law.

Judgment affirmed.