DOMENGEAUX, Judge.
Plaintiff-appellee, Ford Motor Credit Company (Ford), financed a 1973 Ford Maverick automobile owned by Durwood W. Carraway, and secured a chattel mortgage thereon which was duly recorded as prescribed by law. Defendant-appellant, State Farm Mutual Automobile Insurance Company (State Farm), issued a policy of collision insurance to Carraway covering the Maverick and containing a loss payable clause in favor of Ford. A collision occurred and the Maverick was declared a total loss. At the time of the accident the gross balance due on Carraway’s chattel mortgage note was $2,710.86. Ford claimed its net balance from State Farm as loss payee under the aforementioned collision policy. State Farm refused to pay and Ford sued. Defendant answered, denying liability essentially on the basis that plaintiff by its actions destroyed the insurer’s rights of subrogation. State Farm filed a third party action against Durwood Carraway and his minor son, Wayne, the driver of the Maverick at the time of the accident. The Carraways answered the third party action and additionally implead-ed Ford as a third party defendant.
Judgment was rendered in the trial court in favor of Ford and against State Farm in the amount of $2,100.00. The judgment also rejected State Farm’s demands against *915 Carraway, and Carraway’s demands against Ford.
State Farm has appealed.
A stipulation of facts was entered into by all parties on the morning of the trial as follows:
“1.
That effective May 21, 1973, for a policy period of May 21, 1973, to November 21, 1973, State Farm Mutual Automobile Insurance Company issued its policy number 1105 611 E21 18 to Durwood W. Carraway covering the 1972 Ford Maverick automobile involved in this matter. That among other coverages the above mentioned policy included $100 deductible collision insurance with Ford Motor Credit Corporation [sic] as the loss payee.
2.
That the premiums on the above mentioned policy were to be paid on a ■ monthly basis. That the initial payment was the only payment made and the policy of insurance was correctly and effectively cancelled as of June 17, 1973.
3.
That Ford Motor Credit Company was notified of this cancellation on July 5, 1973, but was given an additional 13 days coverage from that date. Therefore, as to the loss payee, Ford Motor Credit Company, the policy of insurance was effective through July 18, 1973.
4.
That on July 13, 1973, the insured vehicle was involved in a collision in Tulsa, Oklahoma, while being operated by Wayne R. Carraway, the minor son of Durwood Carraway. That a copy of the ‘official police traffic collision report’ prepared by representatives of the Tulsa Police Department is attached hereto and made a part hereof by reference. That as may be seen by reference to the above mentioned report, the accident occurred when Wayne R. Carraway collided with the rear of a vehicle being operated by Kenneth C. Lambrecht and occurred as a result of the negligent operation of Wayne R. Carraway.
5.
That the policy of insurance mentioned above and the rights of Ford Motor Credit Company and State Farm Mutual Automobile Insurance Company were subject to the terms and conditions of a ‘Loss Payable Clause’. That a copy of that Loss Payable Clause is attached hereto and made a part hereof by reference.
6.
That on August 20, 1973, Durwood Carraway surrendered and released the insured vehicle to Ford Motor Credit Company and in so doing, executed a document entitled ‘Voluntary Surrender and Release’. That a copy of that release is attached hereto and made a part hereof by reference.
7.
That the net loss sustained by Ford Motor Credit Company as a result of its financing the Carraway vehicle and the damages to the Carraway vehicle as a result of the accident mentioned above is stipulated to be $2,100.
8.
That the only witnesses who may be called at the trial of this matter are Jackie Netherlin of Ford Motor Credit Company and Huey T. Littleton of State Farm Mutual Automobile Insurance Company.”
*916 The only witness to testify at trial was Mrs. Netherlin, who was called by plaintiff. Defendant did not call Mr. Littleton.
Mrs. Netherlin testified substantially to the effect that: at the time of the accident of July 13, 1973, and subsequently, she was employed by plaintiff Ford, and her duties consisted of the handling of delinquent accounts and insurance matters related thereto; she handled the Carraway account and, after being notified of the accident, was called by Mr, Norman Craven, a representative of defendant - State Farm, who told her that in order to make claim under the loss payable clause of the insurance policy, Ford should obtain possession of Carraway’s Maverick and dispose of the salvage; accordingly, Ford took possession of the Maverick through a voluntary surrender and release form signed by Carra-way and approved by his attorney; the only other method of obtaining possession of any vehicle on which the account was delinquent was by legal foreclosure proceedings; she handled this matter exclusively for Ford and had numerous discussions with Mr. Craven, and finally, with Mr. Littleton, presumably the local manager of State Farm; it was not until after Ford received the vehicle through the voluntary surrender and release, and sold the salvage, that she was notified by the State Farm people that they would require an assignment of Carraway’s note and chattel mortgage before Ford could be paid under the loss payable clause of the collision insurance policy.
The applicable part of the voluntary surrender and release document signed by Carraway in favor of Ford reads as follows:
“Being unable to pay the balance due on the note(s), title retention or lien instruments) which the above dealer transferred to you in connection with the above transaction, the undersigned hereby voluntarily returns to you the above described commodity for such disposition as you may wish to make of the same, hereby transferring and assigning to you all of the undersigned’s right, title and interest in and to the said commodity, PROVIDED, HOWEVER, that such surrender and transfer is upon the express understanding and condition that the undersigned is relieved from any and all further liability or responsibility in connection with the said transaction.”
The loss payable clause contained in State Farm’s collision policy reads in pertinent part:
“Whenever the company shall pay the Lienholder any sum for loss or damage under such policy and shall claim that, as to the Lessee, Mortgagor, Owner or other Debtor, no liability therefor existed, the company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may at its option, pay to the Lien-holder the whole principal due or to grow due on the mortgage or other security agreement with interest, and shall thereupon receive a full assignment and transfer of the mortgage or other security agreement and of all such other securities; but no subrogation shall impair the right of the Lienholder to recover the full amount of its claim.”
It is the position of State Farm that by accepting a voluntary surrender and release of the insured vehicle, Ford destroyed State Farm’s contractual subrogation rights under the collision insurance policy. Ford on the other hand contends that the voluntary surrender and release merely cancelled any further indebtedness which Carraway may have had to Ford under the note and chattel mortgage, and that Carraway’s release in this respect had no effect on whatever subrogation rights in tort State Farm may have had. Alternatively, Ford contends that should it be decided that State Farm’s subrogation rights were prejudiced, then in that event the latter has waived any subrogation rights it *917 may have had by virtue of its conduct in causing Ford to secure possession of the ■ vehicle.
We do not find it necessary to reach the main arguments of either State Farm or Ford as to what effect the voluntary surrender and release had on State Farm’s subrogation rights. We conclude that State Farm is estopped from asserting its defense of loss of subrogation rights.
Certain acts by an insurer under certain circumstances may constitute a waiver of its subrogation rights. Polk Chevrolet Company v. Salario, 132 So.2d 115 (La.App. 1st Cir. 1961) ; Freund v. Insurance Company of North America, 261 F.Supp. 131 (1966), affirmed 370 F.2d 924 (1967); Annot. 38 A.L.R.2d 1096; Annot. 16 ALR2d 1261.
We opine that the instruction or suggestion by the State Farm representative to Mrs. Netherlin, that Ford had to obtain possession of the vehicle before the claim could be settled, was such an act and circumstance. The uncontradicted testimony of Mrs. Netherlin is that she was told Ford must have possession of the vehicle in order to settle the claim. The voluntary surrender and release which was executed by Carraway was a proper method of obtaining possession. The only other method of obtaining possession would have been by seizure or foreclosure. The latter procedure was not resorted to, as stated by Mrs. Netherlin, because the vehicle was situated in the State of Oklahoma and legal proceedings in that State may have been cumbersome and lengthy.
State Farm cannot now complain nor refuse to pay Ford under the terms of the policy, due to the fact that it led Ford into believing that the action which was taken to obtain possession was proper and in compliance with the terms of the policy.
For the above and foregoing reasons the judgment of the trial court is affirmed, at appellant’s costs.
Affirmed.