23191

Tara T. SIMMONS and Betty Bradham as Co-Representatives of the Estate of William R. Simmons, Respondents v. SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.

(391 S.E. (2d) 560)

Supreme Court

*Robert J. Thomas* and *Robert P. Wood,* both of *Rogers, Thomas, Cleveland, Koon, Waters & Tally,* Columbia, *for appellant.*

*J. Michael Baxley,* of *Driggers & Baxley,* Hartsville and *Russell P. Patterson,* of *Jones, Schneider & Patterson,* Hilton Head Island, *for respondents.*

Heard Feb. 20, 1990.

Decided April 16, 1990.

CHANDLER, Justice:

South Carolina Farm Bureau Mutual Insurance Company (Insurer) appeals an Order reforming its insurance policies to provide Respondents with Underinsured Motorist Coverage (UIM). We affirm.

## FACTS

On August 28, 1984, William R. Simmons was injured in an accident while riding as a passenger in a pickup truck owned by his brother and sister-in-law. Simmons had five auto insurance policies with Insurer, and was also a named insured on a policy covering the pickup truck.

Simmons' claim for UIM benefits was denied by Insurer. Thereafter, he filed suit against the driver of the other vehicle, Velma Sharpe, who had liability limits of $15,000/$30,000. A copy of the summons and complaint was sent to Insurer, advising that any judgment against Sharpe in excess of $15,000 would result in an action against Insurer for UIM benefits.

Shortly before trial, Simmons notified Insurer that the suit

against Sharpe was pending, and offered to settle for $30,000. Insurer, again, denied any liability for UIM benefits.[1]

A jury trial on June 26, 1987, resulted in a $120,000 verdict against Sharpe. Thereafter, Simmons executed a "Covenant not to Levy Execution" (Covenant) against Sharpe in excess of her $15,000 limits.

Simmons then instituted this action against Insurer. The trial judge reformed the policies, awarding Simmons $90,000[2] on the grounds that Insurer had failed to make an effective offer of UIM coverage under *State Farm Mutual Auto Ins. v. Wannamaker*, 291 S.C. 518, 354 S.E. (2d) 555 (1987).

## ISSUES

1. Does *Wannamaker* apply retroactively?
2. Was Simmons required to formally serve Insurer with the summons and complaint against Sharpe?
3. Was Insurer's subrogation right destroyed by Simmons' execution of the Covenant?

## DISCUSSION

### I. RETROACTIVITY OF WANNAMAKER

In *Wannamaker, supra,* this Court established four criteria to determine whether an offer of UIM coverage is effective.[3] Insurer concedes that the offer here does not satisfy *Wannamaker,* but contends that *Wannamaker* should be applied prospectively only. We disagree.

"The general rule regarding retroactive application of judicial decisions is that decisions creating new substantive rights have prospective effect only, whereas decisions creating new remedies to vindicate existing rights are applied retrospectively." *Toth v. Square D*

---

[1] Simmons died in July, 1986, and the Co-Administrators of his Estate were substituted as Respondents.

[2] This amount represents $15,000 UIM coverage on each of five policies Simmons had with Insurer, plus $15,000 for the policy of his brother and sister-in-law.

[3] These criteria are: (1) the Insurer's notification process must be commercially reasonable; (2) the limits of optional coverage must be specified; (3) the insured must be intelligibly advised of the nature of UIM coverage; and (4) the insured must be told that optional coverages are available for an additional premium. 291 S.C. at 521, 354 S.E. (2d) at 556.

*Co.*, 298 S.C. 6, 8, 377 S.E. (2d) 584, 585 (1989). Prospective application is required when liability is created where none formerly existed. *Id.*

Clearly, *Wannamaker* creates no new substantive right; actions to reform insurance policies have long been available to insureds. *Wannamaker* merely provides a method for determining whether a policy should be reformed. Accordingly, its criteria apply retrospectively.

## II. SERVICE OF SUMMONS AND COMPLAINT

Insurer next contends it was entitled to formal service of the summons and complaint against Sharpe. We disagree.

At the time Simmons instituted suit, S.C. Code Ann. § 56-9-830 (1976)[4] required a party seeking *UNINSURED* benefits to formally serve the insurer. Although recent legislation applies the same requirement for *UNDERINSURED* benefits,[5] no such provision existed at the time Simmons commenced his suit and, therefore, Insurer was not entitled to formal service of the summons and complaint.

## III. SUBROGATION

Insurer contends it is not liable for UIM benefits as the "Covenant Not to Levy Execution" against Sharpe destroyed its right to subrogation.

"Subrogation is an equitable right and will be enforced or not according to the dictates of equity and good conscience." *Powers v. Calvert Fire Ins. Co.*, 216 S.C. 309, 317, 57 S.E. (2d) 638, 642 (1950). In *Powers,* we stated:

> [an Insurer] cannot sit down and hold its hands and purse and thereafter escape liability for fulfillment of its contract by reason of the insured's effort, after fair notice, to recoup his loss by litigation against a wrongdoer.

216 S.C. at 316, 57 S.E. (2d) at 642.

---

[4] This section was repealed and recodified as § 38-77-150 by 1987 Act No. 155, § 1.

[5] *See,* S.C. Code Ann. § 38-77-160 (Effective July 1, 1989).

Here, it would be inequitable to permit Insurer to rely upon its right of subrogation after denying, repeatedly, any contractual obligation for UIM benefits. Moreover, when it failed to appear or intervene in the action against Sharpe, Insurer waived its subrogation rights.

Affirmed.

GREGORY, C.J., and HARWELL, FINNEY and TOAL, JJ., concur.