**Donna Kay SEXTON and Robert D. Sexton, Wife and Husband, Plaintiffs,**

v.

**CONTINENTAL CASUALTY COMPANY, d/b/a CNA, Defendant.**

No. 74651.

Supreme Court of Oklahoma.

Sept. 10, 1991.

John L. Harlan, Harlan, Harlan, & Branscum, Sapulpa, for plaintiffs.

Joseph A. Sharp, Best, Sharp, Holden, Sheridan & Stritzke, Tulsa, for defendant.

SUMMERS, Justice.

The Honorable Thomas R. Brett, Judge of the U.S. District Court for the Northern District of Oklahoma, Certified to this court the following question:

> "Whether an insurer's prior denial of the insured's uninsured motorist coverage claim operates to estop that insurer from later invoking the *Porter* doctrine's protection against the destruction of its subrogation rights."

We answer the question in the affirmative, and hold that when an insurer completely denies a claim for uninsured motorist (UM) coverage by its insured the insurer is estopped from later invoking the defense of loss of subrogation rights.

Continental Casualty Company issued a Business Auto Policy to Avis Rent–A–Car Systems, Inc. The policy insured Avis' fleet of rental vehicles for personal injury liability with limits of $100,000 per person

and $300,000 per accident for the period of December 31, 1984, to December 31, 1985. Continental offered Avis uninsured motorist coverage and Avis signed a rejection of the coverage. Avis renewed the policy for the period of December 31, 1985, to December 31, 1986.

On January 5, 1986, Cecil Southern rented a car from Avis, with Donna Sexton, Barbara Howell, and another authorized as additional drivers. The rental agreement included liability insurance in the amounts of $100,000 per person and $300,000 per accident. The rental agreement also offered "Personal Accident Insurance" (medical pay) for an additional charge, and that additional insurance was accepted. Neither Continental nor Avis offered uninsured motorist insurance coverage to the authorized drivers.

The next day Barbara Howell was driving the rental car when a collision occurred, resulting in injuries to plaintiff Sexton and another passenger. The parties stipulated that the total damages of all claimants under the Continental policy exceeded the $300,000 liability coverage.

The injured parties agreed as to how to split the $300,000 from Continental. The Sextons made a claim upon Avis for uninsured motorist coverage, which Avis denied on the basis of its previous rejection of UM coverage. The Sextons also made a claim with Continental for UM coverage, which in turn denied the UM claim.

After Avis and Continental denied the Sextons' UM claims the Sexton's received $97,250 from the $300,000 upon signing a release prepared by an attorney retained by Avis. The release discharged driver Howell and Avis "from all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of any and all known and unknown personal injuries and property damage resulting or to result from the accident."

Avis acted on behalf of Continental in distributing the $300,000.

Donna and Robert Sexton also recovered $10,000 from Farmers & Merchants Insurance Company. This amount represented the liability coverage on Howell's personal vehicle. No stipulation or finding has been made as to whether the Sexton's damages exceed $107,250.

Twice before we have noted the existence of the question, but in neither case was it properly before us, and, as is our practice, we declined to address it hypothetically. *See Uptegraft v. Home Ins. Co.,* 662 P.2d 681, 687 (Okl.1983) and *Frey v. Independence Fire & Cas. Co.,* 698 P.2d 17, 20 (Okla.1985). Continental would have us today pass over it a third time, claiming there can be no UM coverage once the insured settled for less than liability policy limits. Resolution of the question Continental raises is not fairly comprised within the question certified for our decision.[1] We thus decline to address it, and proceed to answer the question certified by Judge Brett.

### UM COVERAGE OF RENTAL VEHICLES

First we should acknowledge how Southern's car, rented from Avis, comes to be covered by uninsured motorist coverage even though Avis had rejected UM coverage from its insurer. In *Moon v. Guarantee Ins. Co.,* 764 P.2d 1331 (Okla.1988) we held that the rental company's rejection of UM coverage was not the ultimate lessee's rejection, and that absent a written rejection by the consumer/lessee, the coverage statutorily imposed by 36 O.S.1981 § 3636 was in place to accommodate those otherwise insured persons who might be injured by uninsured or underinsured motorists.

### DEPRIVATION OF SUBROGATION AS A DEFENSE

In *Porter v. MFA Mutual Insurance Company,* 643 P.2d 302 (Okla.1982), we

---

**1.** Continental also suggests the question has been made moot by a 1989 amendment to section 3636 of Title 36. That amendment does not apply to the present controversy since it was not in effect on the date of issuance, or date of last renewal, of the policy under which the Sextons' brought their claims. *See Uptegraft v. Home Ins. Co.,* 662 P.2d 681, 684 n. 2 (Okla.1983).

said "as a general rule an insured who deprives insurer, by settlement and release, of its right of subrogation against the wrongdoer thereby provides insurer with a complete defense to an action on the policy." *Id.* 643 P.2d at 305. Today we conclude that this rule does not apply when an insurer denies coverage prior to the settlement and release. A short review of this area of the law will explain our reasoning.

■ An act of an insurer may cause it to waive its subrogation rights or estop the insurer from asserting those rights. *Ford Motor Credit Company v. State Farm Mutual Automobile Insurance Company,* 309 So.2d 914, 917 (La.App. 3rd Cir.1975). *See also National Mutual Insurance Company v. Fincher,* 428 N.E.2d 1386, 1389–1390 (Ind.App.1981). As explained in *Allstate Insurance Company v. Austin,* 120 Ga.App. 430, 170 S.E.2d 840 (1969), certiorari dismissed as improvidently granted, 226 Ga. 93, 172 S.E.2d 602 (1970):

> Whether the destruction of the right to subrogation constitutes a complete defense to an action on the policy, therefore, depends upon whether there is a prior breach of contract or waiver or estoppel on the part of the insurer which of itself cancels out its right to demand subrogation as a condition of payment. *Id.* 170 S.E.2d at 843.

Insurers often protect their subrogation rights by including in a policy a "consent to settle" provision requiring the insurer's consent to any settlement between the insured and a third party.[2] Several jurisdictions enforce this provision and require an insured to obtain consent from its insurer prior to settling with an uninsured tortfeasor. For example, in *Nationwide Mut.*

*Ins. Co. v. Webb,* 291 Md. 721, 436 A.2d 465 (1981), the Maryland court observed:

> The standard uninsured motorist endorsement, and the endorsement in the instant case, requires the insurer's consent to any settlement with the uninsured motorist. Unlike "consent to sue" clauses, "consent to settle" clauses are generally upheld, at least to the extent that settlements, consent judgments, releases, covenants not to sue, etc. between insureds and the uninsured motorists are not binding upon insurers unless the insurers have given their consent. *Id.* 436 A.2d at 476.

The Maryland court cited opinions from several jurisdictions in support of this statement.[3]

■ Requiring consent is consistent with the general principle that "[a]n insurer's undertaking *cannot* be altered or modified by an insured's agreement with a third party in the absence of the insurer's consent." *Travelers Ins. Companies v. Dickey,* 799 P.2d 625, 628 (Okla.1990). However, when an insurer arbitrarily withholds consent such action constitutes a waiver. *Benson v. Farmers Ins. Co.,* 227 Kan. 833, 610 P.2d 605, 611 (1980). *See also National Mutual Insurance Company v. Fincher,* 428 N.E.2d at 1390. In *Benson* the Kansas court said: "[i]n determining whether or not the withholding of consent was arbitrary, the test is whether the insurer had the opportunity to participate in the settlement negotiations." *Id.*

Insurers have been held to have consented to settlement and the loss of their subrogation rights by suggesting settlement or advising an insured to settle. For example, in *National Mutual Insurance Company, supra,* the Indiana court explained that an

---

**2.** The policy involved in the present case is not a part of the record before us.

**3.** *Dancy v. State Farm Mutual Automobile Insurance Co.,* 324 F.Supp. 964 (S.D.Ala.1971); *State Farm Fire and Casualty Company v. Rossini,* 107 Ariz. 561, 490 P.2d 567 (1971); *McInnis v. State Farm Mutual Automobile Ins. Co.,* 208 So.2d 481 (Fla.App.1968); *Tuthill v. State Farm Insurance Company,* 19 Ill.App.3d 491, 311 N.E.2d 770 (1974); *Benson v. Farmers Ins. Co., Inc.,* 227 Kan. 833, 610 P.2d 605 (1980); *Gauthreaux v. Travelers Ins. Co.,* 348 So.2d 737, 739 (La.App. 1977); *Aetna Cas. & Sur. Co. v. Poirier,* 371

Mass. 257, 356 N.E.2d 452 (1976); *U.S. Fidelity & Guaranty Co. v. Hillman,* 367 So.2d 914 (Miss. 1979); *Kisling v. MFA Mutual Insurance Company,* 399 S.W.2d 245, 250–251 (Mo.App.1966); *Worobec v. State Farm Mut. Auto. Ins. Co.,* 200 Neb. 210, 263 N.W.2d 95 (1978); *Charest v. Union Mutual Ins. Co. of Providence,* 113 N.H. 683, 313 A.2d 407 (1973); *Stanko v. Hartford Acc. & Indem. Co.,* 121 R.I. 331, 397 A.2d 1325 (1979); *Ford v. State Farm Mut. Auto. Ins. Co.,* 550 S.W.2d 663 (Tex.1977). (Footnote omitted). *See also Couch on Insurance 2d* § 61:193.

insurer's "direct suggestion of settlement" to its insured would amount to a waiver of, or estoppel with regard to, its loss of subrogation rights. *Id.* 428 N.E.2d at 1390. *See also Ford Motor Credit Company v. State Farm Mutual Automobile Insurance Company,* 309 So.2d at 917, wherein the court explained that the insurer could not complain of loss of subrogation rights since its advice led the insured into believing that the release was proper under the policy.

An insurer may not complain of its lack of consent to settlement and the attendant loss of subrogation rights when the settlement comes after the insurer denied coverage under the policy. For example, in *Roberts v. Fireman's Insurance Co. of Newark, N.J.,* 376 Pa. 99, 101 A.2d 747 (1954), the court stated:

> It is well settled that as a prerequisite to the enforcement of a right of subrogation, the subrogee must have paid or, at least, have offered to pay in discharge of the subrogor's claim.... Here, the insurance company not only did not offer to pay the insureds' claim under the policy or any part of it but, as expressed by its own designated adjuster, persisted in denying liability on the ground that the loss was not covered by the insurance contract. If anyone can be said to have repudiated the policy, it was the insurer rather than the insured. Yet, the company now seeks to avoid liability under the policy by claiming that the insured violated the contract and, in so doing, extinguished the insurer's right of subrogation. The contention is manifestly without merit. *Id.* 101 A.2d at 749–750. (Citations omitted).

Other courts echo this principle. *See Powers v. Calvert Fire Insurance Co.,* 216 S.C. 309, 57 S.E.2d 638, 642 (1950); *Simmons v. South Carolina Farm Bureau Mutual Insurance Company,* 301 S.C. 267, 391 S.E.2d 560, 562 (1990); *Liberty Mutual Insurance Company v. Flitman,* 234 So.2d 390, 392–393 (Fla.App.1970); *Dinn Oil Company v. Hanover Insurance Company,* 87 Ill.App.2d 206, 230 N.E.2d 702, 705 (1967); *Alderman v. Hanover Insurance Company,* 169 Conn. 603, 363 A.2d

1102, 1107 (1975). *See also Couch on Insurance 2d* at §§ 61:192 and 61:193.

In *Uptegraft v. Home Ins. Co., supra,* we explained that an insurer's loss of subrogation rights due to the running of the statute of limitations on a claim against the tortfeasor could not bar a UM claim by the insured. *Id.* 662 P.2d at 686. We cited therein *Selected Risks Ins. Co. v. Dierolf,* 138 N.J.Super. 287, 350 A.2d 526, 529 (1975). *Id.* 662 P.2d at 684–685 n. 4 and 686 n. 11. In noting this case we said the following.

> In *Selected Risks,* the court said that by virtue of this cooperation agreement, the initial responsibility to act to protect subrogated rights rests upon the insurer. It held that when an insurer sits on these rights, it cannot be heard to complain when the statute of limitations has run. *Id.* 662 P.2d at 686–687 n. 11.

Similarly, in *McDonald v. Republic–Franklin Ins. Co.,* 45 Ohio St.3d 27, 543 N.E.2d 456 (1989), the court said that: "[a]n insurer must aid its insured in the preservation of its subrogation rights." *Id.* 543 N.E.2d at 460.

Subrogation is a doctrine the law has devised for the benefit of one secondarily liable who has paid the debt of another. This Court has recognized that subrogation may be either of two kinds: (1) legal or equitable, or (2) conventional subrogation. *Lawyer's Title Guaranty Fund v. Sanders,* 571 P.2d 454 (Okla.1977). Legal or equitable subrogation is a creature of equity and does not depend upon a contract. *Republic Underwriters v. Fire Ins. Exchange,* 655 P.2d 544, 546 (Okla.1982). Conventional subrogation "comes from a contract or agreement, expressed or implied." *Lawyer's Title Guaranty Fund v. Sanders, supra* at 456. The subrogation involved in this case is clearly of the conventional sort; it arises, if at all, from the contractual obligation of Continental. Continental chose to repudiate its alleged contractual obligation when it denied coverage to the Sextons. The Sextons, relying on Continental's representation that it had no liability, settled with the tortfeasor and her insurer, and gave the required releases. Such representation by Continental, accom-

panied by the detrimental reliance of the Sextons, created an estoppel[4] when the Sextons later brought suit against Continental.

In *Old Surety Life Insurance Co. v. Miller*, 333 P.2d 504 (Okla.1958), the Syllabus by our Court states in part:

> Any course of action or conduct on the part of the insurance company which leads a party insured honestly to believe by that conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on the part of insured will estop the company from insisting upon the forfeiture, although it might be claimed under the express letter of the insurance contract. *Id.*

Continental, having earlier denied any contractual relationship with the Sextons for UM coverage, would like now to resurrect the insurance contract to claim loss of the subrogation rights it was given thereunder. The law does not accommodate such a change of position.

It is also worth noting that Avis, acting on behalf of the insurer, and after the insured had unsuccessfully presented a UM claim to both Avis and Continental, prepared the release which it now claims destroyed its subrogation rights. Here the insurer didn't sleep on its rights as in *Selected Risks, supra,* but rather, effectively destroyed its own subrogation rights by the release its attorney prepared. An insured does not have the duty to protect an insurer from itself.

The fact, however, that the UM carrier and the liability carrier were one and the same company here is not dispositive. Neither is the fact that the UM carrier's attorney prepared the release. The certified question is broader, and in our opinion, is deserving of an answer. The answer is this. When an insurer denies uninsured motorist coverage under a policy to its insured and the insured then settles with a third party the insurer may not thereafter complain of its loss of subrogation rights.

*Roberts v. Fireman's Insurance Co. of Newark, N.J., supra.* It is estopped to do so. We conclude and hold that an insurer's complete denial of UM coverage to its insured estops that insurer from thereafter invoking the *Porter* defense of loss of subrogation rights arising from the settlement.

Certified Question Answered.

HODGES, V.C.J., and LAVENDER, DOOLIN, HARGRAVE, ALMA WILSON and KAUGER, JJ., concur.

OPALA, C.J., and SIMMS, J., concur in result.

---

4. An estoppel "arises from the principle that if either party to an insurance contract makes, by word or act, a false representation of fact with reference to the contract upon which the other, acting in good faith reasonably relies to his prejudice, he will not be allowed to make any claim which is inconsistent with such representation." *Continental Ins. Co. of New York v. Portwood,* 184 Okl. 22, 84 P.2d 435, 438 (1938).